Argued and submitted April 22, reversed and remanded August 10, 1988

HUGHEY,
*Appellant,*

*v.*

LIND et al,
*Respondents.*

(85-6-269; CA A43976)

758 P2d 431

Robert D. Herndon, West Linn, argued the cause for appellant. With him on the brief was Hutchison, Hammond, Walsh, Herndon & Darling, P.C., West Linn.

Richard H. Busby, Portland, argued the cause and filed the brief for respondents.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

In this action to set aside a fraudulent conveyance, plaintiff appeals from a judgment for defendants entered after a trial to the court in which the court found that the transfer had a legitimate purpose and, therefore, was not fraudulent. On *de novo* review, we reverse.

Defendant DML, Inc., was established in the early 1970s by defendants David W. and Margaret Lind for the purpose of distributing supplies to hairstyling salons. They were the only shareholders. On January 28, 1984, they passed a resolution to dissolve DML, but did not execute the Articles of Dissolution until May 7, 1984. The Articles of Dissolution state that all debts and liabilities of the corporation have been "paid and discharged in full" and that "[t]here are no suits pending against [DML] in any court."

After DML was dissolved, the Linds transferred its assets to Lind Distributing, Inc., a corporation owned by their son, David L. Lind. They signed a bill of sale, a copy of which was admitted in evidence and which does not indicate that the original was dated or notarized.[1] The bill of sale states a purchase price of $100; Lind Distributing received assets valued at $131,904.22 and assumed liabilities of $143,542.65.[2] That document also states: "The seller hereby covenants * * * that seller is the owner of the above-described personal property; that the same is free from all encumbrances." The son intended to continue the business of DML of distributing supplies to hairstyling salons through Lind Distributing, Inc., doing business as Nexxus of Oregon, the same name as had been used by DML.

Prior to its dissolution, DML was the sole distributor in Oregon of Nexxus hair care products. Margaret Lind was offered a position as education director of Nexxus in December, 1982. She assumed that position and, in December, 1983, the vice president of Nexxus informed her that she must

---

[1] The copy states "Dated ..., 1984." In his complaint, plaintiff alleged only that the transfer occurred in 1984; Margaret Lind testified that she thought that the bill of sale was executed in March, 1984, which, if true, would mean that the Linds transferred the assets and liabilities before they had acquired them through the dissolution.

[2] The debt to plaintiff was not listed among the liabilities. From the record, it appears that there is confusion as to what the corporate liabilities were.

divest her interest in DML. Margaret testified that DML was dissolved because of the conflict that existed between her participation in the independent distributorship and her position with Nexxus.

In April, 1984, before DML was dissolved, plaintiff obtained a judgment against DML in the Superior Court of Lewis County, Washington. The judgment was entered after David W. Lind dismissed his attorney on the day before trial; judgment was entered against DML by default. That lawsuit was predicated on plaintiff's having loaned DML $10,000 that was not repaid. David W. Lind contends here that the $10,000 was not a loan but an investment that did not produce a return. In any event, a judgment was entered that is valid on its face.

■       Plaintiff's complaint asked the court to set aside both the transfer from DML to the Linds on dissolution and from the Linds to their son. The case was tried on the theory that the transfer from DML to David L. Lind through his parents was one conveyance. The Articles of Dissolution and the bill of sale appear to have been executed contemporaneously. *See* note 1, *supra.* David L. Lind does not claim that he was without knowledge of plaintiff's claim against DML; however, he testified that he thought plaintiff's claim was going to be dismissed. Because the record indicates that the dissolution was intended as the first step in transferring the corporate assets to the son, the transfer should be treated as one conveyance from DML to David L. Lind.

At the time of the alleged fraudulent conveyance, *former* ORS 95.070 provided:

> "Every conveyance or assignment in writing or otherwise of any estate or interest in lands, goods or things in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents or profits thereof, made with the intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered with the like intent, as against the person so hindered, delayed or defrauded is void."

The issue is whether Margaret and David W. Lind caused the assets of DML to be conveyed to David L. Lind "with the

intent to hinder, delay or defraud creditors." In this equitable action to set aside the conveyance, we review the record *de novo.*

■     In an action charging a fraudulent conveyance, the plaintiff normally has the burden of proving by a preponderance of the evidence that a transfer was made with the intent to hinder, delay or defraud a creditor. However, if there are certain "badges of fraud," the burden shifts to the defendant to show that the conveyance was not made with an intent to defraud creditors, that the consideration was fair and that no benefit was secured or reserved to the grantor. *Bivens v. Hancock,* 71 Or App 273, 279, 692 P2d 153 (1984). The Supreme Court identified several "badges of fraud" in *Evans v. Trude et al and Champlin et al,* 193 Or 648, 656-57, 240 P2d 940 (1952), some of which are apparent in this case: the transfer of property in anticipation of a pending lawsuit, transfer of all of the debtor's property and the close relationship between the transferors and the transferee. When such a close relationship exists, the transaction is scrutinized closely. *Smith and Smith,* 74 Or App 656, 664, 705 P2d 197 (1985).

■     Although the Linds explained that Margaret Lind's new job required that she divest all of her interest in DML, we are unconvinced of the legitimacy of the method used to do that. That Nexxus had required her to divest herself of her interest in DML did not require the dissolution of DML. She, or both she and her husband, could have transferred their stock to their son, leaving DML intact, with all of its liabilities, including plaintiff's judgment. It is significant that DML's debt to plaintiff was omitted from the Articles of Dissolution and the bill of sale and was not assumed by David L. Lind. In the articles, dated May 7, 1984, the three Linds, including David L. as a director of DML, certified that no action was pending against DML and that all of its debts had been discharged. In fact, the judgment against DML had been entered three weeks earlier, on April 18, 1984. David W. Lind knew the status of the lawsuit against DML and made the decision not to contest it. According to the Linds' testimony, the bill of sale was intended to allow their son to acquire the assets and assume the liabilities of the dissolved DML. Yet the judgment in favor of plaintiff was omitted as one of the liabilities.

We conclude that the method used by David W. and Margaret Lind to transfer DML's assets to David L. Lind was for the purpose of defeating plaintiff's ability to collect his judgment against DML[3] and, therefore, that the transfer was made with the intent to hinder, defraud or delay plaintiff.

■     Defendants argue that, even if there had been no dissolution of DML, plaintiff could not have collected its judgment, because DML was insolvent and would have sought protection in bankruptcy. That may be true; however, there is no evidence that the corporate assets were subject to any security interests. Therefore, plaintiff could have levied execution on those assets and, if DML had gone into bankruptcy, plaintiff would have shared the assets with the other general creditors. Moreover, the possibility of a bankruptcy does not make it less likely that the conveyance was intended to defraud plaintiff and does not affect his present rights arising from the fraud.

Reversed and remanded.

---

[3] Plaintiff argues in his brief that he is entitled to satisfy his claim against DML out of the assets distributed to the shareholders on dissolution, citing ORS 57.630. No such claim was alleged or asserted in the trial court. We do not consider it.