Argued and submitted June 17, affirmed December 28, 1994

## Michael J. MORRIS,
*Appellant,*

*v.*

## Otis NANCE,
*Respondent.*

(9302-00779; CA A81242)

888 P2d 571

Michael J. Morris argued the cause and filed the briefs *pro se*.

Ferris F. Boothe argued the cause and filed the brief for respondent.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

De Muniz, J., dissenting.

## LEESON, J.

Plaintiff appeals from a judgment dismissing his suit to set aside debtor's transfer of property to defendant. Plaintiff contends that the conveyance was fraudulent under the Uniform Fraudulent Transfer Act (UFTA). ORS 95.200 *et seq*. He bases his arguments on two theories: (1) that debtor's preferential transfer to defendant was made "with actual intent to hinder, delay, or defraud any creditor" under ORS 95.230(1)(a); and (2) that the transfer to defendant constituted constructive fraud under ORS 95.230(1)(b) or ORS 95.240(1). We review *de novo*, ORS 19.125(3), and affirm.

Defendant and debtor were married for several years and had two sons. They were divorced in 1970. Defendant relinquished all of his interest in their marital home, but continued to provide debtor with goods and to perform extensive building maintenance and other services to enable her to live independently. Plaintiff is debtor's former attorney and the assignee of debtor's unpaid account to a now-dissolved law firm.[1]

In July, 1992, plaintiff notified debtor that he was about to commence an action to obtain a judgment against her. Shortly thereafter, debtor executed a deed conveying the fee interest in her home to defendant, reserving a life estate to herself. The stated consideration was "love and affection." In October, 1992, after plaintiff commenced an action on the debt, debtor executed a second deed. It made the identical conveyance but "corrected" the first deed by specifying the consideration as "past care, support and miscellaneous expenses and future expenses for the care and support of the grantor."

■  Debtor and defendant had an express agreement that, in exchange for the services and materials defendant had provided and would continue to provide to debtor, defendant would receive the house when debtor dies. Both acknowledged that

---

[1] Debtor suffers from a mental disorder and, although she is unable to live independently without assistance, she has not been adjudicated as unable to care for her needs or a danger to herself or others. The unpaid fees for legal services, approximately $12,000, were for services rendered to defeat the state's attempt to have debtor committed. *See State v. Nance*, 85 Or App 143, 735 P2d 1271 (1987).

this agreement was the only way she could compensate defendant for his past and continuing assistance. There is no evidence, however, that debtor executed a will to carry out the agreement; prior to execution of the deeds, the agreement was oral.[2] The trial court held that plaintiff is not entitled to relief, because the transfer was not fraudulent as to plaintiff.

██ ██    We first address plaintiff's argument that the trial court erred in concluding that the transfer of debtor's house to defendant was not made with actual intent to hinder, delay or defraud. According to plaintiff, the trial court should have imposed on defendant the burden of proving that the transfer of debtor's house was not a fraudulent transfer. Plaintiff relies on *Hughey v. Lind*, 92 Or App 433, 437, 758 P2d 431 (1988), for the proposition that, although the burden of proving fraudulent intent is normally on the plaintiff, the presence of several so-called "badges of fraud" may serve to shift to the defendant the burden of proving that the transfer was not fraudulent.[3] Once the burden shifts to the defendant, the defendant must show: (1) that the transfer was not made with the intent to defraud; (2) that it was in exchange for fair consideration; and (3) that no benefit was reserved by the debtor. *See also Nelson v. Hansen*, 278 Or 571, 577, 565 P2d 727 (1977).

Although *Hughey* was decided in 1988, it, like *Nelson*, stated the rule under *former* ORS 95.010 – ORS 95.100. Those provisions were repealed in 1985 by the UFTA.[4] Notwithstanding the continuing authority of many pre-UFTA cases, which

---

[2] Although there is no evidence that debtor has executed a will, plaintiff's contention that there is no enforceable claim based upon a contract to make a will is without consequence. The agreement between debtor and defendant could be given effect by an *inter vivos* conveyance of a future estate, as was done here. Although defense counsel conceded that debtor may lack testamentary capacity, plaintiff did not raise the issue as to whether debtor had capacity to execute a deed.

[3] "Badges of fraud" is a judicially created concept. The Supreme Court has described badges or indicia of fraud as "accompanying circumstances tending to excite suspicion and distrust as to the bona fides of the challenged conveyance and which, standing unexplained, may warrant an inference of fraud." *Evans v. Trude et al. and Champlin et al.*, 193 Or 648, 655, 240 P2d 940 (1952).

[4] Oregon's former fraudulent conveyance statute prohibited, in express terms, only transfers that were made with actual fraudulent intent. *See former* ORS 95.010 – ORS 95.100 (*repealed by* Or Laws 1985, ch 664, § 16). Because Oregon courts recognized that the narrow grounds expressed in the prior statute were insufficient to properly protect creditors, they, like many other jurisdictions, expanded the scope of protection. They allowed actual fraud to be inferred from the "badges of fraud," recognized a rebuttable presumption of fraud when sufficient "badges" were present, and formulated grounds for constructive fraud as a conclu-

survive because much of the UFTA "codifies principles recognized by the courts prior to its enactment," Blum, *supra* n 4 at 379-80, § 18.1, those cases are authoritative only to the extent that they are in harmony with the UFTA. The central issue in this case is whether the burden shifting analysis of *Hughey* and *Nelson* is consistent with the UFTA.

In construing a statute, our task is to discern the intent of the legislature. The first level of analysis is to examine both the text and context of the statute, including other provisions of the same statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). We are enjoined by ORS 174.010 from inserting into the statute what has been omitted or omitting what has been inserted. 317 Or at 611.

ORS 95.230 provides in part:

"(1)   A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

"(a)   With actual intent to hinder, delay, or defraud any creditor of the debtor[.]

"* * * * *

"(2)   In determining actual intent under paragraph (a) of subsection (1) of this section, *consideration may be given, among other factors*, to whether:

"(a)   The transfer or obligation was to an insider;

"(b)   The debtor had retained possession or control of the property transferred after the transfer;

"(c)   The transfer or obligation was disclosed or concealed;

"(d)   Before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit;

"(e)   The transfer was of substantially all the debtor's assets;

"(f)   The debtor had absconded;

---

sive presumption when certain strong factors are present. Blum, *Oregon Debtor-Creditor Law* 384-85, 387, 390, §§ 18.5, 18.6, 18.7 (2d ed 1992). Much of the UFTA is a codification of the principles recognized by the courts; it expressly authorizes the use of factual inferences as proof of actual fraud, *see* ORS 95.230(2), and specifies those circumstances that give rise to constructive fraud, *see* ORS 95.230(1)(b), ORS 95.240. Blum, *supra* at 385, § 18.5.

"(g)  The debtor had removed or concealed assets;

"(h)  The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

"(i)  The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

"(j)  The transfer had occurred shortly before or shortly after a substantial debt was incurred; and

"(k)  The debtor had transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor." (Emphasis supplied.)

ORS 95.230(1)(a) clearly calls for a case-by-case factual determination of whether a transfer was made with actual intent to hinder, delay or defraud. ORS 95.230(2) provides a means for creditors to overcome the difficulties of proving actual fraudulent intent by direct evidence. It allows the inference of actual intent to be drawn from the presence of listed factors or other suspicious factual circumstances surrounding the transfer. Many of the listed factors are a codification of the "badges of fraud" that had been judicially engrafted to *former* ORS 95.070 (*repealed by* Or Laws 1985, ch 664, § 16). *See, e.g., Evans v. Trude et al. and Champlin et al., supra* n 3, 193 Or at 656-57. ORS 95.230(2) contains no suggestion that certain factors carry more weight than others or that the presence of several factors should shift the burden of proof to the defendant.[5] To the contrary, the factors listed in ORS 95.230(2)(c) and ORS 95.230(2)(h) could weigh in a defendant's favor. Thus, both plaintiffs and defendants may use circumstantial evidence to show that a transfer was or was not made with intent to defraud. The absence of actual fraudulent intent can only be shown by evidence that supports an alternative motive on the part of a defendant. Determining a mental state by indirect proof suggests the need to weigh the factual circumstances advanced by the parties before drawing any inference. To presume fraud whenever a plaintiff presents a circumstantial

---

[5] It is clear from an examination of pre-UFTA cases that no standard existed to determine when an inference was strong enough to carry presumptive weight and result in shifting of the burden of proof to the defendant. Blum, *supra* at 387 n 28, 389-90, § 18.6 (a list of case citations is provided).

case amounts to placing a judicial thumb on one side of the balance created by the legislature.

■ Other provisions of ORS chapter 95 bolster our conclusion that the UFTA does not contemplate the burden shifting suggested by plaintiff. ORS 95.230(1)(b) and ORS 95.240 expressly identify the circumstances that constitute constructive fraud.[6] No similar provisions were included in *former* ORS 95.010 — ORS 95.100. Because *Hughey v. Lind, supra,* 92 Or App at 437, allowed the conclusion that fraud was present even in the absence of actual fraudulent intent, the two additional elements that had to be proved by the defendant once the burden was shifted — lack of "fair consideration" and "reservation of a benefit" — must be understood as judicially recognized elements of constructive fraud. To find fraud in the absence of actual fraudulent intent required a legal construct not addressed by the former statutes. Because the UFTA addresses constructive fraud, we conclude that the burden-shifting test in *Hughey v. Lind* and *Nelson v. Hansen* is not compatible with the UFTA.

■ In *Allen v. Meinig,* 109 Or App 341, 346, 819 P2d 744 (1991), *rev den* 313 Or 209 (1992), we followed the lead of the

---

[6] Under ORS 95.230(1)(b), a transfer is fraudulent as to a present or future creditor if the debtor made the transfer

"[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

"(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

"(B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due."

ORS 95.240(1) provides:

"A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation."

ORS 95.240(2) provides:

"A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for other than a present, reasonably equivalent value, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent."

parties and applied the test stated in *Nelson v. Hansen, supra,*
278 Or at 578, to shift the burden of proof to defendant. Here,
for the first time, we are asked to construe the meaning of the
UFTA according to its plain terms. In so doing, we recant the
analysis in *Allen* regarding the burden shifting under the
UFTA.[7] According to the plain terms of ORS 95.230, the
"badges of fraud" included as factors in ORS 95.230(2) are to be
weighed against evidence presented by the defendant to deter-
mine whether a transfer was made with actual intent to defraud
or was a legitimate preference among creditors. Just as "badges
of fraud" may be used to raise the inference of actual intent,
some of the factors in ORS 95.230(2), along with other evidence,
may also be used to infer lack of actual intent. The burden of
persuasion remains on the plaintiff to show actual intent by a
preponderance of the evidence.

■■ ■■ On *de novo* review, we find the presence of three
"badges of fraud" that suggest fraudulent intent on the part of
defendant in this case: (1) debtor transferred her residence to
defendant following notice of plaintiff's threat of suit; (2) defen-
dant is an "insider" within the meaning of the statute;[8] and

---

[7] Since *Allen v. Meinig*, this court has construed terms contained in the UFTA
by their plain meaning. *See Cushman v. Wilkinson*, 129 Or App 317, 879 P2d 873
(1994) ("good faith" in ORS 95.270(1) interpreted by examination of text and
context to mean subjective good faith).

[8] ORS 95.200 provides, in part:
   "(7)   An 'insider' includes:
   "(a)   If the debtor is an individual:
   "(A)   A relative of the debtor * * *;
   "* * * * *
   "(11) 'Relative' means an individual related within the third degree as
   determined by the common law, a spouse, or an individual related to a spouse
   within the third degree as so determined, and includes an individual in an
   adoptive relationship within the third degree."
The trial court erroneously concluded that defendant was not an "insider," because
the spousal relationship had been terminated by divorce. The definition of "insider,"
however, is derived from the Bankruptcy Code, *see* 11 USC § 101(31), which makes
clear that the word "includes" is not limiting, *see* 11 USC § 102(3). 7A ULA 647
(1985). Thus, the listed categories of "insider" are instead intended to be examples.
The cases that have considered this issue generally consider it a question of fact that
is analyzed by examination of two factors:
   "(1) the closeness of the relationship between the transferee and the debtor; and
   (2) whether the transactions between the transferee and the debtor were
   conducted at arm's length."
*Matter of Holloway*, 955 F2d 1008, 1011 (5th Cir 1992) (transferee who was former

(3) debtor retained possession of the property after the transfer by reservation of a life estate. Because debtor retained a life estate, we are not convinced that the transfer was of substantially all of debtor's assets or that it left debtor insolvent.

Nevertheless, there is no doubt that defendant rendered substantial services and expended a significant amount of his own funds for the benefit of debtor. As recognized by the trial court, the crucial question is whether the transfer of property from debtor to defendant was intended as compensation for defendant's past efforts, or whether defendant had performed those services gratuitously, making the recitation of consideration in the "corrected" deed merely for the purpose of defeating plaintiff's claim.[9]

---

spouse of debtor was held to be "insider" under the UFTA because of frequency of contact and efforts to protect each other even though they had been divorced for more than 20 years and both had subsequently remarried).

[9] The dissent asserts that its own *de novo* review of the record confirms the trial court finding that "there is no dispute concerning the timing or the purpose of the transfer to the extent that it was designed to defeat plaintiff's attempt to recover unpaid legal fees." That statement is best understood in the context of the trial court's discussion:

"[T]here is no dispute concerning the timing or purpose of the transfer to the extent that it was designed to defeat plaintiff's attempts to recover unpaid legal fees. There is a substantial question of fact whether the parties intended the transfer to compensate defendant for past services or whether those past services were gratuitously performed and the exchange an afterthought, as is inferable from the original and 'corrected' recitations of consideration in the two deeds. Although there is room for doubt, and reason for skepticism, I have assessed the testimony of [defendant] and find it credible: I find it more likely than not that he rendered the services, that they were approximately of the value he claims for them (or at least equivalent in value to the subject property), that he and [debtor] actually agreed in the past that [defendant] would receive the property in compensation for his services, and that accomplishing that objective was the real reason for the subject transfer (even though the original deed recited affection as the consideration).

"Before my research, I fully expected that this was not enough—that because the purpose and effect of the transfer was to defeat plaintiff's claim, and because the antecedent debt was vague and quasi-familial in nature, the transfer was 'fraudulent' as a term of art and could be avoided by plaintiff because [it was] made with actual intent to 'hinder' a creditor within the meaning of fraudulent conveyance law. Although I adhere to my original conclusion that defendant was not entitled to use his promise of future support as consideration for the transfer, I am now persuaded that because the [defendant] was divorced and not cohabitating with the debtor when he rendered services for her, his claim was a valid one and constituted an antecedent debt for purposes of ORS 95.220; I am further persuaded that [debtor] could legitimately prefer defendant as a creditor as against plaintiff by transferring the subject property without rendering the transfer fraudulent within the meaning of ORS 95.230 or 95.240, and that the

■    The trial court concluded that, despite "room for doubt, and reason for skepticism," defendant's testimony was credible that "the real reason for the subject transfer" was to accomplish the objective of the agreement between debtor and defendant. Although we are not bound by the trial court's findings of fact, where evidence is conflicting, we afford great weight to those findings. *Haines Com'l Equip. Co. v. Butler*, 268 Or 660, 664, 522 P2d 472 (1974); *Jewell v. Kroo*, 268 Or 103, 106, 517 P2d 657, 518 P2d 1305 (1973). We are persuaded by our review of the record that defendant had rendered services at least equivalent in value to that of the transferred property; that defendant and debtor had an agreement that predated plaintiff's threatened suit whereby defendant would receive the property in compensation for those services when debtor dies; and that fulfillment of that agreement was the primary reason for the transfer. Defendant has shown that the transfer was made for a legitimate purpose and was not made with actual fraudulent intent.

■    Plaintiff argues that the trial court erred in characterizing defendant's efforts and expenditures on debtor's behalf as "value" within the meaning of ORS 95.220,[10] thus undermining the validity of the consideration exchanged for the transfer. Because of the agreement between debtor and defendant that she would compensate him by giving him the house when she dies, defendant had a right to payment constituting a

---

transfer was made in exchange for equivalent value as a valid preference among creditors and was therefore not fraudulent."

[10] ORS 95.220 provides:

"(1) *Value is given for a transfer* or an obligation *if in exchange for the transfer* or obligation property is transferred or *an antecedent debt is* secured or *satisfied*, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

"* * * * *

"(3) 'Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

"(4) 'Creditor' means a person who has a claim against debtor.

"(5) 'Debt' means liability on a claim." (Emphasis supplied.)

The parties concede that promises of future support do not constitute "value" and are not at issue here.

claim.[11] Debtor's liability on that claim was a debt and defendant's claim made him a creditor. Debtor's transfer of the house in exchange for defendant's past services was in satisfaction of an antecedent debt and, therefore, defendant has given value within the meaning of ORS 95.220. Moreover, because the uncontroverted evidence shows that the value of defendant's past services exceeds the value of debtor's house, defendant gave at least reasonably equivalent value in exchange for the transfer.

■ ■ Plaintiff next argues that an additional "badge of fraud" is present, because debtor's reservation of a life estate, along with a "secret reservation in the form of an understanding" that the property would ultimately go to the sons of debtor and defendant, amounts to a reservation of a benefit by her. That debtor chose to transfer less than all of her estate does not in itself constitute reservation of a benefit so as to make the transfer fraudulent. Plaintiff remains in a better position than if debtor had transferred all of her rights in the property. Moreover, whether the property is ultimately transferred to the sons of debtor and defendant depends entirely on defendant. Debtor retains no incidents of ownership other than a life estate. Debtor retains no rights in the property she actually transferred to defendant in that the transferred property interest was solely a remainder. Thus, we cannot say that, by reserving a life estate, debtor reserved any unfair or improper benefit in the transferred property. We conclude that the transfer of debtor's property was not made with the intent to defraud and was in exchange for reasonably equivalent value.

■ Finally, we address plaintiff's contention that the transfer should be voided, because it satisfies the statutory elements of constructive fraud. Plaintiff alleges two conclusive presumptions of constructive fraud: (1) inadequate consideration and prospective financial instability of debtor under ORS

---

[11] The dissent contends that there was no legitimate debt, because defendant stated that he would have helped debtor out of affection even without payment and because there was no enforceable contract prior to the deed. Although we find that the record supports the existence of an express agreement, we note that the trial court also cited *Ibach v. Hoffman*, 184 Or 296, 303, 198 P2d 266 (1948), for the proposition that, where valuable services are rendered "without an express agreement for compensation, the law will imply an agreement," except where board or lodging are furnished to a parent by a child, in which case the services are presumed to be gratuitous. Furthermore, the statute recognizes "debt" to include all legal and equitable obligations. ORS 95.200(3) and (5).

95.230(1)(b), and (2) inadequate consideration and insolvency of debtor under ORS 95.240(1). Both grounds require plaintiff to show that the transfer was not made for reasonably equivalent value. Because defendant's past services constitute reasonably equivalent value, plaintiff's claims alleging constructive fraud are without merit.[12]

Affirmed.

**De MUNIZ, J.,** dissenting.

I dissent. It is not entirely clear to me from the majority's opinion what either a plaintiff or a defendant must prove in an action under the UFTA. The majority accepts that the statutory scheme establishes a case-by-case determination of actual fraudulent intent from factors that include those set out in ORS 95.230(2). However, as I understand the majority's interpretation, irrespective of a plaintiff's proof of those factors, the burden never shifts to a defendant to negate the inference of fraudulent intent. As I discuss below, I do not agree with that interpretation of the UFTA. However, even if the majority's interpretation is correct, on my review of the record here, I conclude that plaintiff proved that the conveyance was fraudulent under the UFTA.

In the first instance, I do not agree with the majority that there was a legitimate debt between defendant and debtor. While no one can gainsay the equities in defendant's favor,[1] they do not prove the existence of an enforceable debt. I agree that there was evidence that defendant "rendered substantial services and expended a significant amount of his own funds for the benefit of debtor." 132 Or App at 224. However, the evidence does not support that he did so because he knew he would eventually be paid. Defendant testified that debtor

---

[12] Plaintiff did not plead constructive fraud under ORS 95.240(2), or raise on appeal the issue of whether defendant is an "insider" within the meaning of ORS 95.240(2) and ORS 95.200(7). *See* n 6, *supra*. Accordingly, we do not reach the issue of whether the transfer was voidable as a fraudulent transfer to an "insider" for inadequate *present* value as opposed to antecedent debt. ORS 95.220(3) provides:

"A transfer is made for present value if the exchange between the debtor and the transferee is intended by them to be contemporaneous and is in fact substantially contemporaneous."

[1] There are also equities on plaintiff's side. Debtor's ability to remain in her home is due, not only to defendant's help, but also to the legal proceedings that defeated the state's attempt to commit her. *See* 132 Or App at 218 n 1.

wanted him to have the house in payment for his help. However, he acknowledged that he would have helped her out of affection, even without payment. Although debtor wanted defendant to receive the house on her death, there was nothing but an understanding that that would occur. There was no evidence of any contract under which defendant could have enforced that understanding.

However, even if there was a debt, I do not agree that it was one that debtor could satisfy at the expense of plaintiff. There is no question that the transfer was between "insiders" and that debtor retained possession of the property after the transfer. I do not agree with the majority that satisfaction of defendant's debt was the "primary reason for the transfer." 132 Or App at 225. I agree with the trial court's conclusion that the evidence shows that

> "there is no dispute concerning the timing or purpose of the transfer to the extent that it was designed to defeat plaintiff's attempts to recover unpaid legal fees."

Defendant testified that when plaintiff's letter came informing debtor of plaintiff's planned action, defendant and debtor discussed the letter and decided to talk to counsel. They did so and, as a result, signed the deeds transferring the property. Under ORS 95.230(1)(a), a transfer is fraudulent if it is made with intent to hinder any creditor. Plaintiff was a creditor, and his proof was more than sufficient to give rise to an inference of an actual intent to defraud by a transfer, the purpose of which was to hinder collection of plaintiff's debt.

Defendant presented no evidence to negate that proof of actual intent to defraud. Apparently, under the majority's interpretation of the UFTA, he did not need to do so. The majority appears to conclude that, under the UFTA, the burden does not shift to defendant. If that is so, I am unable to understand how the action proceeds.

Under earlier law, the presence of certain factors assisted a plaintiff by giving rise to an inference of the intent to defraud. I do not disagree with the majority that the codification of those factors under ORS 95.230(2) does not include the weight to be given to any one factor or require that a certain number of factors must exist before the burden shifts to a defendant. The majority is also correct that under the UFTA, as

under earlier case law, the determination of actual intent to defraud is a factual determination to be made on a case-by-case determination, which may mean that some of the factors could weigh in favor of a defendant.

However, I do not understand how making that factual determination can be done without shifting the burden of persuasion, unless a plaintiff fails to establish a prima facie case. Whether a plaintiff's proof of factors in ORS 95.23(2) or other factors makes a prima facie case is a determination to be made by the court after the plaintiff rests. If the court determines that the evidence could support an inference of actual intent to defraud, then necessarily the burden must shift to the defendant to negate that inference.

I do not see how the UFTA changes that shifting burden, and, in *Allen v. Meinig*, 109 Or App 341, 819 P2d 744 (1991), *rev den* 313 Or 209 (1992), we held that it does shift. The majority is wrong to revisit the issue solely because *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), reiterates principles of statutory construction.[2] While *PGE* may present an arguable way to arrive at an answer different from the one we reached in *Allen v. Meinig*, that is not enough to justify abandoning *stare decisis*. As we noted in *O'Brien v. State of Oregon*, 104 Or App 1, 6, 799 P2d 171 (1990), *rev dismissed* 312 Or 672, 826 P2d 633 (1992), it is improper to change the answer that a previous case has given

> "simply because, in the abstract, either answer might be logically supportable if we were writing on a clean slate. The slate is not clean, and the [majority] offers no compelling reason to wipe it clean."

I would reverse and remand for entry of a judgment as requested by plaintiff, providing for a lien on the property that cannot be foreclosed while debtor lives on the property.

---

[2] If we were to apply *PGE*, I do not agree that the "plain terms" of the UFTA dictate the result the majority reaches.