Argued and submitted April 14, affirmed in part; reversed and remanded in part; vacated in part September 9, 1998

## Patricia M. DOUGHTY
and Jack M. Doughty,
Trustees of the Doughty Loving Trust,
*Appellants,*

*v.*

Elsie T. BIRKHOLTZ,
Trustee of the Elsie T. Birkholtz Revocable Trust,
Glen C. Hawkins,
Pacific Stone & Supply Co., Inc.,
Pacific.Coast Building Product,
George Groom Trucking Co., Inc.,
Norton Lumber Co., Inc.,
Pacific Coast Building Product,
*Defendants,*

*and*

Francis WATKINS,
aka Frankie Watkins, and Bruce Watkins,
*Respondents.*

Glenn C. HAWKINS,
*Third-Party Plaintiff,*

*v.*

Alice O. KANZELMAN
and Kevin Kanzelman,
dba A & K Construction and Development,
*Third-Party Defendants.*

(96-0487-E-1; CA A97973)

964 P2d 1108

Sandra Sawyer argued the cause and filed the briefs for appellants.

Matthew G. Fawcett argued the cause and filed the brief for respondents.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

## LINDER, J.

In this case, plaintiffs sought to set aside a transfer of real property allegedly made to defraud a creditor and to establish the priority of interests in that real property. Plaintiffs appeal from the trial court's order granting defendants' summary judgment motion and from the court's award of costs to defendants. In granting summary judgment, the trial court ruled that the property transfer was not fraudulent as a matter of law and that a notice of *lis pendens* recorded by plaintiffs, based on a claim filed before the Construction Contractors Board (board), was a nullity. We affirm the court's nullification of plaintiffs' notice of *lis pendens,* reverse the trial court's order dismissing plaintiffs' fraudulent transfer claim, and vacate the court's award of costs to defendants.

The genesis of this dispute is a construction contract between plaintiffs and Alice and Bruce Kanzelman, pursuant to which the Kanzelmans agreed to construct a home for plaintiffs. According to plaintiffs, they advanced money to the Kanzelmans under the contract, which the Kanzelmans then used improperly to purchase real property for themselves, rather than to complete construction of plaintiffs' home. That real property is the subject of this lawsuit.

Plaintiffs took several steps to protect their interests. First, on September 5, 1995, plaintiffs filed a claim with the board based on breach of contract. ORS 701.140(1)(c). Next, on September 26, 1995, they filed a circuit court action for fraud and breach of contract. Finally, they recorded a notice of *lis pendens* based on each proceeding.[1] ORS 93.740. The civil action resulted in a default judgment against the Kanzelmans for damages and gave plaintiffs a constructive trust on the subject property. The judgment transferred to plaintiffs the title in the Kanzelmans' property subject to "claims and liens superior to the title of plaintiffs." At that time, the property had several other liens against it.[2]

---

[1] The validity of the notice of *lis pendens* based on the circuit court action is not disputed.

[2] As part of this case, plaintiffs sought to have the priority of interests in the subject real property determined by the court and thus named other parties claiming an interest in the property. Only the claims asserted against defendants Francis, aka Frankie, and Bruce Watkins are before us.

Plaintiffs' fraudulent transfer claim relates to one of those liens—a second mortgage on the subject property, which Alice Kanzelman gave to defendants Francis, aka Frankie, and Bruce Watkins. The origin of the $25,000 mortgage was a monetary loan from Frankie to Alice, who is Frankie's sister. The loan consisted of three checks from three different people, all of which were given to Alice in June 1995: (1) a June 30 personal check from Frankie for $9,000; (2) a June 15 cashier's check from Arsenio Ferrerra for $9,000; and (3) a June 13 cashier's check from Ferrerra's brother, Juan Soto, for $7,000.

In a September 4, 1996, affidavit, Frankie described the circumstances of the loan:

> "Alice expressed an urgent need for funds * * * but did not go into details. She agreed to sign a promissory note and give me a second mortgage to secure repayment. * * * At no time prior to the recording of my mortgage * * * did I have any knowledge of the claims of any of the other defendants herein, other than * * * [the] first mortgage."

In separate February 19, 1997, affidavits, Ferrerra and Soto explained that they were "long time friends" of defendants and that in June 1995, they learned that Frankie's sister needed some money. They further stated that they hoped to make a better return on their money than they currently enjoyed and, as part of a family transaction, they collectively loaned $16,000 to defendants. They explained the mechanics of the transaction as follows: "Although [their checks were] written to Alice Kanzelman, [they] regard[ed] it as a loan to [Frankie], who in turn loaned it to Alice Kanzelman and included it in the $25,000 note and mortgage." Ferrerra and Soto received no security from either Alice or Frankie in return for their loans.

On July 1, 1995, Alice signed the second mortgage. She did not record it, however, until September 22, 1995. Also, on July 15, 1995, Alice gave defendants a promissory note for the $25,000, which contained repayment terms different from those contained in the second mortgage. On January 26, 1996, the Kanzelmans filed for bankruptcy in the state of Washington.[3]

---

[3] In response to defendants' summary judgment motion, plaintiffs also submitted an affidavit from their lawyer that attested to certain facts that would support

In deciding whether summary judgment was proper, we determine whether the moving party is entitled to judgment as a matter of law, viewing the evidence in the summary judgment record, and all reasonable inferences flowing from it, in the light most favorable to the nonmoving party. For the moving party to prevail on summary judgment, the record must contain no triable issue of fact. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1996).

In plaintiffs' first assignment of error, they argue that the trial court erred in nullifying the notice of *lis pendens* that plaintiffs recorded based on their claim before the board. With regard to that dispute, there are no issues of material fact. For the reasons that follow, we hold that defendants are entitled to judgment as a matter of law.

■ ORS 93.740 provides, in part:

"(1) In all suits in which the title to or any interest in or lien upon real property is involved, affected or brought into question, any party thereto at the commencement of the suit, or at any time during the commencement of the suit, or at any time during the pendency thereof, may have recorded * * * a notice of the pendency of the action * * *."

By its terms, ORS 93.740 predicates the recordation of a notice of *lis pendens* on a presently filed "suit" involving an interest in real property. In the context of ORS 93.740 and in common parlance, the term "suit" refers to "an action or process in court." *Webster's Third New Int'l Dictionary,* 2286 (unabridged ed 1993). That understanding is reinforced by subsection 4 of the statute, which requires that "a party recording a notice of pendency shall use substantially the following form * * *." ORS 93.740(4). The specified form requires, among other information, that the party identify the "[c]ourt" in which the "action" has been filed. *Id.* In turn, under Oregon law, an "action" is commenced by "filing a complaint with the clerk of the court." ORCP 3. Lastly, ORS 93.740 requires that the suit involve, affect, or question "the

their fraud allegation. Defendants dispute those facts and the admissibility of that affidavit. Because we conclude that there is a material issue of fact based on other facts properly in the summary judgment record, we need not consider the facts contained in that affidavit, and we do not reach the issue of its admissibility.

title to or any interest in or lien upon real property." In other words, the subject of the suit must be an actual interest in real property, not merely a speculative future one. *See Hoyt v. American Traders, Inc.*, 301 Or 599, 605, 725 P2d 336 (1986) (ORS 93.740 applies upon the "filing of a complaint in a civil action in which * * * any interest in * * * real property is involved").

■ ■ Here, plaintiffs recorded their first notice of *lis pendens* based on a claim before the board in which plaintiffs alleged that the Kanzelmans breached their construction contract. ORS 701.140(1)(c). Filing a claim with the board triggers an administrative process regulated by ORS chapter 701. *See Stadelman v. Builders Board*, 62 Or App 1, 659 P2d 1017 (1983) (reviewing board's decision as an administrative order). As relevant here, the board has jurisdiction to resolve claims of improper work performance under construction contracts with contractors registered with the board. ORS 701.140. The board's remedial authority is limited to awarding monetary damages, payable directly from the contractor or from the surety bond that a contractor must post as a condition of registration. ORS 701.085(1) and ORS 701.140. Beyond that, the board has only regulatory authority and may suspend or revoke a contractor's registration and issue a civil penalty against the contractor. ORS 701.100. In no event is the board authorized to adjudicate or to affect interests in real property. Thus, a claim before the board is neither a "suit" nor does it determine interests in real property.

Plaintiffs, nevertheless, argue that a claim before the board satisfies the *lis pendens* statute because the claim "would *eventually* become a lien against the [subject real property.]" (Emphasis supplied.) To be sure, an unpaid final order of the board "may be recorded with the county clerk," ORS 701.150(2), in which case it "becomes a lien upon any interest in real property of the person against whom the order * * * is issued * * *." ORS 205.125(3). The recordation of a lien is not automatic, however, nor is that remedy necessarily available following a claimant's success before the board. A lien is an available remedy if, and only if, a damages award by the board remains unpaid ten days after expiration of the 90-day period available for the contractor to pay or the

surety to cover it: ORS 701.150. Further, the claimant must initiate the recordation with the county clerk. *Id.*[4]

Thus, plaintiffs' argument that a damages award from the board may *eventually* become a lien upon the property proves too much, because it highlights what the administrative proceeding is not and what it does not do. A claim before the board may or may not lead to a judicial remedy, but it is not itself a "suit." The board's award of money damages may or may not later give a claimant the ability to record a lien, but the order itself does not "involve, affect or question any interest in real property," as ORS 93.740 requires. Accordingly, the court did not err in nullifying the notice of *lis pendens* that was based on the claim before the board.

In plaintiffs' second assignment of error, they contend that the court erred in granting defendants' summary judgment motion on plaintiffs' fraudulent transfer claim. Claims of fraudulent transfers of property are controlled by the Uniform Fraudulent Transfer Act (UFTA). ORS 95.200 *et seq.* Under UFTA, a plaintiff can prove fraud in two ways: (1) that the transfer was made "with actual intent to hinder, delay, or defraud any creditor[,]" ORS 95.230(1)(a); or (2) that the transfer constituted constructive fraud due to inadequate consideration for the property conveyed and the insolvency or near insolvency of the debtor. ORS 95.230(1)(b); ORS 95.240. Although the adequacy of consideration may also evince an actual intent to defraud, *see* ORS 95.230(2)(h), the proof under each theory is distinct and does not necessarily overlap. Here, although plaintiffs asserted both theories to support their fraudulent transfer claim,[5] we need only address subsection (1)(a), as it is dispositive.

---

[4] The statutory scheme specifically contemplates that the remedies before the board may prove inadequate and that claimants will have to pursue other or additional relief in court. *See, e.g.,* ORS 701.145(2)(d) (allowing the board to refuse to process a claim if "[t]he board determines that the nature or complexity of the claim is such that a court is the appropriate forum for the adjudication of the claim"); *see also* ORS 701.085(9) (allowing suit against a surety 30 days after the surety is notified by the board that payment is due on the claim).

[5] In their amended complaint, plaintiffs alleged that Kanzelman and defendants made the transfer "to cloud title on said real property by giving [defendants] a $25,000 lien upon said property which they could assert as prior in interest to the claims of the plaintiffs[,]" ORS 95.230(1)(a), and that "the trust deed in favor of defendants * * * was not supported by valid consideration." ORS 95.230(1)(b).

 Plaintiffs argue that several "badges of fraud set forth in ORS 95.230 are present[,]" thus precluding summary judgment. We agree. ORS 95.230(1)(a) establishes a case-by-case factual determination of actual fraudulent intent from the "badges of fraud" factors set forth in ORS 95.230(2) and from other suspicious factual circumstances surrounding the transfer. *Morris v. Nance*, 132 Or App 216, 221, 888 P2d 571 (1994).

> "ORS 95.230(2) contains no suggestion that certain factors carry more weight than others or that the presence of several factors should shift the burden of proof to the defendant[s]. To the contrary, the factors listed in ORS 95.230(2)(c) and ORS 95.230(2)(h) could weigh in defendant[s'] favor. Thus, both plaintiffs and defendants may use circumstantial evidence to show that a transfer was or was not made with intent to defraud." *Id.* (footnote omitted).

Consequently, either party may rely on the factors set forth in the statute to raise or dispel inferences of actual intent. *Id.* at 223. Essentially, competing inferences from the parties' evidence lie at the heart of a case under subsection (1)(a) of UFTA.

 Given that on summary judgment review we must view all inferences most favorably to plaintiffs, defendants cannot prevail at this procedural juncture. The record shows the presence of three statutory badges of fraud, which together and in the context of this case give rise to an inference of actual fraudulent intent.[6] Those badges of fraud are: (1) Alice transferred the second mortgage to Frankie, who, as a relative, is an "insider" under the statute, ORS 95.200(7)(a)(A); ORS 95.230(2)(a); (2) Alice recorded the mortgage only four days before plaintiffs filed their suit in circuit court, which resulted in the default judgment against the Kanzelmans, ORS 95.230(2)(d); and (3) approximately

---

[6] We are not suggesting a general rule that summary judgment would never be appropriate in cases brought under UFTA, if the summary judgment record shows the presence of a statutory badge of fraud. The strength of the inference to be drawn in any given case will depend on the nature and number of the statutory badges of fraud and the overall context in which they are present. The test is not whether there is any inference of fraudulent intent, however weak, but whether there is a sufficient inference to create a "triable issue" and be entitled to a jury determination. *Jones*, 325 Or at 413. Here, there is.

four months after Alice recorded the second mortgage, the Kanzelmans filed for bankruptcy, ORS 95.230(2)(i). Additionally, two other suspicious circumstances surrounded the transfer: the mechanics of the loan and the inconsistency of the repayment terms contained in the promissory note and the mortgage agreement.

Accordingly, there is evidence that Alice was in a dire financial state and, consequently, borrowed a significant amount of money from her sister and her sister's friends. However, she gave those friends nothing in exchange for their loans, providing only a mortgage and promissory note to her sister and her sister's husband. The inference that may be drawn in plaintiffs' favor is that the money loaned by Ferrerra and Soto was not part of the mortgage transaction which, in turn, could lead to the conclusion that the second mortgage was not supported by adequate consideration. Furthermore, those documents contained different repayment terms, supporting a reasonable inference that they were distinct repayment "options," the usefulness of which depended on the occurrence of future events that might affect title in the subject property. Lastly, because Alice did not record the mortgage until shortly before plaintiffs filed their action in circuit court against her, an additional corresponding inference follows—Alice's decision to record the mortgage was prompted by her anticipation of the lawsuit. From those facts, a factfinder reasonably could infer that Alice wanted to defeat plaintiffs' potential interest in the subject real property and that she anticipated plaintiffs' action, recording the second mortgage only when she knew plaintiffs could acquire a possibly superior interest in the property absent the second mortgage.

The affidavits submitted by defendants provide testimonial rebuttals to plaintiffs' claim. Specifically, the affidavits from Frankie, Ferrerra, and Soto arguably explain the transaction in such a way as to refute an inference of fraud. Also, in her affidavit, Frankie provides an explanation which, if believed by a factfinder, would defeat a claim of actual intent to defraud. As noted, the statute "contains no suggestion that certain factors carry more weight than others * * *." *Morris*, 132 Or App at 221. Thus, a factfinder would be free to

look at those countervailing affidavits and determine, on balance, what inference to draw. Necessarily, then, there is a material issue of fact for a jury's determination, one that defeats summary judgment for either party. *See also To v. State Farm Mutual Ins.*, 319 Or 93, 104-05, 873 P2d 1072 (1994) (suggesting possible inappropriateness of summary judgment where the moving party offers only witness affidavits in support of its motion and the credibility of the affiants is brought into question by specific facts, particularly when "the knowledge of events * * * on which the action lies are exclusively within the control of the party moving for summary judgment"). Consequently, the trial court erred in granting defendants' summary judgment motion as to plaintiffs' fraudulent transfer claim.

In plaintiffs' third assignment of error, they challenge the trial court's award of prevailing party fees to defendants. We do not reach that issue because the award was predicated upon the trial court's award of summary judgment to defendants. Accordingly, we vacate the award of costs.

Affirmed as to trial court's nullification of plaintiffs' notice of *lis pendens*; reversed and remanded as to plaintiffs' fraudulent transfer claim; prevailing party fee award vacated.