Kelly, J.
(concurring). I write separately to address the concern expressed during this appeal that our decision will leave a great many divorce judgments subject to attack by creditors, thus robbing them of *594 finality. I believe the concern is unfounded. As I will explain, relatively few creditors will be incentivized to bring actions under the Uniform Fraudulent Transfer Act (UFTA) against newly divorced individuals as a result of the Court’s opinion in this case. This is because of the difficulty creditors will encounter in surviving a motion for summary disposition.
Difficulties for creditors will exist on several fronts. First, to maintain a UFTA action, creditors must identify one or more property interests that qualify as “assets” under the act. As the unanimous opinion describes, property held as tenants by the entirety when the judgment is entered is not an asset under the UFTA unless the creditor’s judgment covers both divorced individuals. Normally that property will include real estate, stocks, bonds, and promissory notes, among others. Hence, much of the marital estate will not be subject to a UFTA action.
A second difficulty creditors will encounter is stating a prima facie case alleging a transfer made with an actual intent to defraud. To state such a case, creditors must allege at least one badge of fraud under MCL 556.34(2). In the instant case, the creditor alleged several, including (1) that before the transfer was made, the debtor had been threatened with suit, (2) that the transfer the debtor made was of substantially all his assets, and (3) that the debtor become insolvent after the transfer.
By contrast, regarding most divorce cases, the only badge of actual fraud that might plausibly be alleged is that the transfer took place while the parties were “insiders” under the act.[1] In my opinion, this allegation *595 will not survive a motion for summary disposition. For the UFTA to apply, the transferee must be an insider when the transfer occurs. Although a husband and wife are insiders while married, they normally cease to have that status when the divorce judgment is entered. And it is only when the judgment is entered that the transfer of property takes place, assuming, of course, that the individuals do not exchange the property beforehand.
A more thorough analysis follows.
AUTOMATIC INSIDER STATUS UNDER THE MICHIGAN UFTA
The UFTA’s definition of “insider” includes a relative of the debtor.[2] The definition of “relative,” in turn, includes a spouse.[3] Consequently, spouses are automatic insiders under the UFTA.
*596 A transfer to an insider is one of the relevant factors for determining whether the transfer was made with an actual intent to defraud a creditor.[4] MCL 566.34(2), which supplies a list of such factors, states that any one may be considered to establish the intent to defraud.[5] *597 Because insider status alone can automatically establish fraudulent intent, if all newly divorced spouses were automatic insiders under the UFTA, creditors could jeopardize the finality of many divorce judgments. I agree with the argument of the Family Law Section of the State Bar of Michigan in its brief amicus curiae that this could not have been the Legislature’s intent.
It is interesting to note that the application of the badges of fraud listed in the Michigan UFTA differs from that allowed in other states’ versions of the UFTA. For example, the UFTA as adopted in New Jersey, Oregon, and Illinois does not expressly allow the use of only one factor to establish the intent to defraud.[6] Not *598 surprisingly, in these states, courts require a “confluence” of factors indicating an actual intent to defraud.[7]
As a practical matter, a creditor will normally allege multiple badges of fraud to establish an actual intent to defraud under the Michigan version of the UFTA as well. Multiple factors were present in Szkrybalo v Szkrybalo, in which the Court of Appeals originally rejected the creditor’s claim on the ground that it was based solely on insider status.[8] We remanded the case to the Court of Appeals to review several other badges of fraud alleged under MCL 566.34(2), specifically under subdivisions c, d, h, g, and j.[9] On remand, the Court of Appeals ruled for the plaintiff. The plaintiff raised a genuine issue of material fact regarding whether the debtor-husband had made a transfer to his wife during the marriage with an actual intent to defraud his creditors.[10]
In this case, plaintiff did not base her cause of action solely on the allegation that Jeff Titus made fraudulent transfers to an insider. On remand, the trial court can consider the other badges she alleged, those in subdivisions d, e, and f, in determining whether any transfer was made with an actual intent to defraud plaintiff. *599 Thus, in this case, whether a transfer was made to an insider is not dispositive. However, because our UFTA allows a creditor to allege a single factor, it is important to know whether a divorce judgment may be attacked solely on the ground that spouses are automatic insiders.
NEWLY DIVORCED INDIVIDUALS ARE NOT AUTOMATIC INSIDERS UNDER THE UFTA
In determining whether a transfer under the UFTA was to an automatic insider, it is necessary to consider the parties’ status at the time of the transfer. Under MCL 552.401, the transfer of property interests in a divorce judgment occurs when the judgment is entered.[11] It is also at that time that the marriage is dissolved. The simultaneity of the two events makes it impossible for the parties to be still married at the time the transfer occurs. Because the spousal relationship evaporates at the same moment that the transfer occurs, the parties to the divorce are not automatic insiders under the UFTA.
A question arises about what importance to accord to the parties’ status during the negotiation of the property settlement agreement incorporated into the divorce judgment. Virtually every property settlement agreement is negotiated while the parties are still married. However, the UFTA is concerned with the transferee’s status at the time of transfer, not while the terms of the transfer are being negotiated.[12] The settlement agreement in itself is not a transfer. It is a *600 conditional promise to transfer that has no effect until the divorce judgment is entered.
CONCLUSION
I believe that the great majority of divorce judgments will not be subjected to a UFTA action. A creditor will encounter difficulty sustaining a UFTA action against a newly divorced individual (1) if the property that the creditor seeks was held as tenants by the entirety at the time of divorce or (2) if automatic insider status is the creditor’s only available basis for alleging fraud.

 Creditors might also seek to avoid the dismissal of their UFTA actions by alleging only that the property distribution under a divorce judgment was not for a reasonably equivalent value. This refers to factor h under *595 the act, MCL 566.34(2)(h). The lack of a reasonably equivalent value may be indicative of both actual and constructive fraud. MCL 566.34(l)(a) and (2), MCL 566.34(l)(b), and MCL 566.35(1). But I do not believe that UFTA actions will succeed in altering many property distributions on the basis of this factor alone. The courts have not developed standards for determining what constitutes a reasonably equivalent value in divorce cases. Clearly, many intangible or indirect benefits are involved in the property distributions in these cases. It is usually very difficult to show that the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred. Until standards are developed, creditors will be hard-pressed to demonstrate actual fraud using this factor by itself. Moreover, most property settlements are unlike the one in this case, in which the debtor agreed that Julie Swabash should have virtually all the marital property.

 MCL 566.31(g) states in relevant part:
“Insider” includes all of the following:
(i) If the debtor is an individual, all of the following:
(A) A relative of the debtor or of a general partner of the debtor.

 MCL 566.31(k) states: “ ‘Relative’ means an individual related by consanguinity within the third degree as determined by the common law, *596 a spouse, or an individual related to a spouse within the third degree as so determined, and includes an individual in an adoptive relationship within the third degree.”

 MCL 566.34(1) states in relevant part:
A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor’s claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation ... :
(a) With actual intent to hinder, delay, or defraud any creditor of the debtor.
The term “insider” also appears in MCL 566.35(2), the UFTA provision that deals with preferential transfers:
A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.
In the instant case, plaintiff did not argue that this provision applies to a transfer of property in a divorce. The division of property in a divorce in Michigan is based on “equitable factors.” Sparks v Sparks, 440 Mich 141, 159; 485 NW2d 893 (1992), citing Johnson v Johnson, 346 Mich 418, 431; 78 NW2d 216 (1956). Thus, it is doubtful that the preferential-transfer provision of the UFTA, based as it is on a creditor-debtor model, can be applied to the typical distribution of property in divorce.

 MCL 566.34(2) provides:
In determining actual intent under subsection (l)(a), consideration may be given, among other factors, to whether 1 or more of the following occurred:
(a) The transfer or obligation was to an insider.
(b) The debtor retained possession or control of the property transferred after the transfer.
*597 (c) The transfer or obligation was disclosed or concealed.
(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(e) The transfer was of substantially all of the debtor’s assets.
(f) The debtor absconded.
(g) The debtor removed or concealed assets.
(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

 See NJ Stat Ann 25:2-26; Or Rev Stat 95.230(2); 740 Ill Comp Stat 160/5(b). The language these statutes share in common states: “In determining actual intent..., consideration may be given, among other factors to whether [various factors are present].” In contrast, MCL *598 566.34(2) provides: “In determining actual intent ... , consideration may be given, among other factors, to whether 1 or more of the following occurred....”

 See In re Hill, 342 BR 183, 199 (Bankr D NJ, 2006); see also In re Knippen, 355 BR 710, 732-733 (Bankr ND Ill, 2006) (citing cases for the proposition that in sufficient number, e.g., seven, the factors give rise to a presumption of fraud); Morris v Nance, 132 Or App 216, 223; 888 P2d 571 (1994) (reasoning that some factors can be used to infer fraudulent intent, while others can be used to infer the lack of such intent).

 Szkrybalo v Szkrybalo, unpublished opinion per curiam of the Court of Appeals, issued September 21, 2006 (Docket No. 269125).

 Szkrybalo v Szkrybalo, 477 Mich 1086 (2007).

 Szkrybalo v Szkrybalo (On Remand), unpublished opinion per curiam of the Court of Appeals, issued May 31, 2007 (Docket No. 269125).

 MCL 552.401 provides in relevant part: “The [divorce] decree, upon becoming final, shall have the same force and effect as a quitclaim deed of the real estate, if any, or a bill of sale of the personal property, if any, given by the party’s spouse to the party.”

 MCL 566.34(2)(a).