## STANFIELD v. ARNWINE.

(202 Pac. 559.)

**Contracts—Contract for Sale of Crop of Lambs Performed by Tender of Crop Notwithstanding Statement as to Number.**

1. A contract for the sale of about 3,800 head of mixed lambs, being all of the seller's 1918 crop, called only for delivery of the full crop of lambs, though numbering only 2,800.

**Evidence—Evidence as to Lambs Delivered Under Previous Contract Admissible to Show What was Meant by Descriptive Language.**

2. Under Sections 717 and 718, Or. L., providing that circumstances may be shown in construing an instrument and that any technical, local or peculiar signification of the terms used may be shown, where a contract for the sale of lambs provided that they should be of "good size and merchantable condition" and the seller had sold his crop of lambs for the previous year to the buyer, evidence as to the sort of lambs delivered the year before was admissible as tending to show what the parties meant by the quoted expression.

**Sales—Contract for Sale of Crop of Lambs Held to Call for Lambs of the Kind Specified.**

3. A contract for the sale of the seller's crop of lambs to be of good size and merchantable condition required the delivery of lambs of such size and condition whether stall fed or range fed, and was not satisfied by the delivery of the particular lambs intended, irrespective of their quantity or condition, and hence evidence as to where the seller's sheep were kept, preceding the time for delivery and who was in charge of them, was immaterial.

---

1. Validity and construction of contract for sale of season's output, see notes in 1 A. L. R. 1392; 9 A. L. R. 276.

Contracts—Evidence—Evidence as to Seller's Understanding as to Meaning of Contract Inadmissible.

4. In an action on a contract for the sale of lambs, to be of "good size and merchantable condition," the seller's testimony as to his understanding of the contract as to the weight of the lambs was inadmissible, as the contract was to be interpreted by the court, unless there was evidence of the surrounding circumstances or peculiar meaning of the terms used, making a question of mixed law and fact for the jury.

Custom and Usages—Testimony That Witnesses had Never Heard That Description of Lambs Required any Certain Weight, etc., not Admissible, not Proving a Custom.

5. In an action on a contract for the sale of lambs, to be of "good size and merchantable condition," where the buyer introduced expert testimony as to what the weight of such a lamb should be, the seller might have introduced similar testimony, but could not introduce testimony that the witnesses had never heard that "good size and merchantable condition" meant that lambs should weigh any certain number of pounds, or had never heard of a buyer rejecting an entire band of sheep on account of their weight; such testimony not tending to prove a custom.

Sales—Reputation of Seller of Lambs and Witness as to Being Good Sheepmen Inadmissible on Issue of Breach by Tendering Poor Quality.

6. In a buyer's action on a contract for the sale of the seller's crop of lambs to be of good size and merchantable condition, where the buyer had rejected the lambs tendered as not in compliance with the contract, evidence as to the reputation of the seller and one of his witnesses as to being good sheepmen was inadmissible.

Sales—Evidence as to State of Market and Market Value Admissible Under Counterclaim for Refusing to Accept.

7. In a buyer's action for breach of a contract for the sale of lambs, brought on the theory that those tendered did not comply with the contract, where the seller counterclaimed for the buyer's refusal to accept those tendered, evidence as to the state of the market and the market price of such lambs at the time and place of delivery was admissible in support of the counterclaim.

Sales—Measure of Damages for Refusing to Accept Stated.

8. If lambs tendered by a seller were of the kind and quality specified in the contract, and the buyer wrongfully refused to receive and pay for them, the measure of the seller's general damages was the difference between the contract price and the lesser market price at the time and place of delivery.

Witnesses—Cross-examination of Seller as to Advance Required in Case of Sale of Smaller Number of Lambs Held Immaterial.

9. As a contract for the sale of about 3,800 lambs, being the seller's 1918 crop, only called for delivery of the entire crop, though numbering only about 2,800, cross-examination of the seller as to how much advance on the purchase price he would have required if he had offered to sell only 2,800 was immaterial.

**Witnesses — Cross-examination of Defendant Properly Excluded as Calling for Argument in Favor of Adverse Party.**

10. Where under a contract for the sale of about 3,800 lambs, being the seller's 1918 crop, the seller tendered only about 2,800, cross-examination of him as to how much advance he would have received if he had offered to sell only 2,800 was properly excluded, as amounting to an effort to require the seller to advance an argument to the jury in favor of the buyer.

**Evidence—Party's Instructions to Agent Held Self-serving.**

11. In an action on a contract for the sale of lambs, the buyer's telephonic instructions to his agent in reference to buying all the lambs he could get was inadmissible, on behalf of the buyer, as a self-serving declaration.

**Sales—Instructions as to Abandonment of Contract Held not Within the Issues.**

12. Where a buyer of lambs rejected those tendered as not in compliance with the contract, and sued the seller for breach of the contract, and the seller counterclaimed for the buyer's refusal to accept the lambs tendered, there was no issue as to abandonment of the contract by the buyer, and an instruction submitting that issue was erroneous.

**Appeal and Error—Issues on New Trial Limited by Holding on Appeal.**

13. In a buyer's action for breach of contract, with counterclaim by the seller for the buyer's breach, the holding on a former appeal that instructions as to abandonment of the contract were not within the issues was the law of the case, to which the parties were bound to conform their proceedings on a new trial.

**Sales—Buyer Entitled to Recover Earnest-money and Expenses upon Seller's Breach.**

14. If a buyer of lambs was without fault in the performance of the contract on his part and was ready, able and willing to receive and pay for lambs answering the description prescribed by the contract, but the seller tendered lambs not complying therewith, and failed to deliver lambs of the description called for, the buyer was entitled to recover the earnest-money paid and such reasonable expenditures as he necessarily made in his effort to carry out the contract.

From Malheur: DALTON BIGGS, Judge.

In Banc.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. E. R. Coulter* and *Messrs. Davis & Kester,* with an oral argument by *Mr. Coulter.*

For respondent there was a brief over the names of *Mr. P. J. Gallagher, Mr. W. H. Brooke* and *Mr. J. W. McCulloch,* with an oral argument by *Mr. Gallagher.*

BURNETT, C. J.—It is averred by both parties to this action that the defendant executed an instrument in writing of which the portions material to this controversy are here set down:

"Know all men by these presents that I, R. Arnwine of Juntura, County of Harney, State of Or., hereby covenant and agree to sell, convey and deliver to R. N. Stanfield, of Stanfield, Oregon, on or before the —— day ——, 19—, about 3800 head of mixed lambs now being located range and being all of our — my — 1918 crop, for the sum of nine & no —— Dollars per head, payment to be made in the following manner: $5000 00/100 upon the execution of this agreement, the receipt of which is hereby acknowledged, and the balance upon delivery of said ——.

"I — we — further covenant and agree to deliver said 3800 head of lambs to the said R. N. Stanfield on or about the 1st day of Oct., 1918, f. o. b. the cars at Crane, County of Harney, State of Oregon. Lambs cut out of ewes at Connelly Corrals.

"I — we — further covenant and agree, that said 3800 head of lambs shall contain no cripples, bums, or burry wools, and that all of said 3800 head of lambs shall be kept with their mothers until delivery of the same, and at the time of delivery the same shall be of good size and merchantable condition, free from scab, foot-rot, and all other diseases, or exposure to disease, and shall pass federal and state inspection. I — we — also agree that the same shall be free from all liens and incumbrances, and that I — we — will warrant and defend the title to the same. * *

"In witness whereof, I — we — have hereunto set my — our — hand and seal this 12 day of Aug., 1918.

                              "RECTOR ARNWINE   (Seal).
"Witness, W. K. McCORMACK."

The document consisted of a printed form designed · for the use of an individual or of more than one contractor, some of the blanks in which were not filled, which accounts for the incompleteness of the paper as set out herein.

The payment of the $5,000 required by the contract is also admitted.

The complaint charges that the defendant failed to deliver the lambs called for by the contract or any part of them at the time specified in the agreement, although the plaintiff was at the place of delivery ready, able and willing to receive them; that the defendant had there about 2,800 head of lambs which he offered to deliver under the contract, but that they did not comply with the terms of that instrument, for the reason that they were not of good size and were not in merchantable condition, but on the contrary were undersized and in poor condition, weighed only forty to forty-five pounds each, and were stunted and runty; and that a lamb to be of good size and merchantable condition, as called for by the contract, should weigh at least sixty pounds. The plaintiff says he refused to accept the lambs so offered, and this is admitted by the answer.

It is likewise alleged in the complaint and admitted by the answer that the defendant refused to repay to plaintiff the $5,000 mentioned, although the plaintiff demanded repayment of the same. The complaint charges special damages accruing on account of transportation and expenses of employees sent to receive the lambs and for expenses of a train of cars provided for carriage of the animals on delivery. The averments of the complaint conclude with the allegation that the plaintiff has been damaged in the sum of $5,000 together with interest from the date of pay-

ment, and further sums of money for demurrage on the train and for expenses of employees.

The answer puts in issue the averments about the defendant's refusal to deliver sheep, the statements of the complaint that the lambs offered did not comply with the contract, and the allegation that the lambs required should weigh at least sixty pounds each. The answer likewise challenges the averments of the complaint about damages. Answering further in counterclaim, the defendant affirms in substance that previous to making the contract the agent of the plaintiff examined the greater portion of the lambs in question and altered the form of contract presented during the negotiations, so that instead of requiring the sheep to be "strictly fat" that term should be stricken out, and under those circumstances the defendant signed the contract. He contends in substance that it was the intention of the contract to specify the flock of lambs raised by the defendant during the season of 1918, without regard to their condition; that on October 1st he had the lambs at the place of delivery and was ready, able and willing to deliver them to the plaintiff, there being approximately 2,800 head thereof, the entire crop of lambs raised by the defendant in 1918; and that when the agents of the plaintiffs arrived, they repudiated and rescinded the contract and failed and refused to take possession of and receive said lambs, refused to pay to the defendant any further sum of money upon the contract and at that time demanded that the defendant pay back to the plaintiff the sum of $5,000 theretofore paid on said contract. The defendant further avers in substance that he was then and there ready, able and willing, and for many months afterwards during which he kept them, was prepared, to deliver to the

plaintiff all the lambs raised by the defendant in 1918, all as required by the contract. He continues his affirmative defense and counterclaim by averring that he was unable to resell the lambs for more than seven dollars per head at or near the place of delivery, and that he bought supplies and provisions and employed men for the purpose of delivering the lambs at an expense of $250. He claims damages in the sum of $5,600, being the difference between the contract price and the lesser market value of 2,800 lambs at the time and place of delivery, together with the $250 for expenses as stated; so that after applying the $5,000 payment he claims a net judgment of $850. The new matter in the answer is traversed by the reply, except as the same agrees with the complaint.

Over the objection of the plaintiff the court submitted to the jury two questions to be answered in a special verdict, as follows: (1) Was there an abandonment or repudiation of this contract by the plaintiff? (2) Was there a breach of the contract by the plaintiff? The jury answered both the questions in the affirmative and returned a general verdict for the defendant, fixing his damage in the sum of $5,000. The court entered judgment in favor of the defendant and against the plaintiff, together with costs and disbursements.

1. As a preliminary question, consideration will be given to the provision of the contract about the number of lambs to be delivered, concerning which there is much argument in the briefs. The language of the contract in question on this point may be condensed as follows: "About 3,800 head of mixed lambs, being all of my 1918 crop." In *Brawley* v. *United States*, 96 U. S. 168 (24 L. Ed. 622, see, also, Rose's U. S. Notes), the property named in the con-

tract was thus described: "880 cords of sound, of first quality, of merchantable oak wood, more or less, as shall be determined to be necessary by the post commander for the regular * * supply of the troops and employees of the garrison of said post." The contractor had cut 880 cords of wood for delivery under the contract and had delivered 75 cords before he received notice that only 40 cords would be taken. On appeal from the judgment of the court of claims dismissing the contractor's petition, Mr. Justice BRADLEY, speaking for the Supreme Court, laid down the following precept:

"Where a contract is made to sell or furnish certain goods, identified by reference to independent circumstances, such as an entire lot deposited in a certain warehouse, or all that may be manufactured by the vendor in a certain establishment, or that may be shipped by his agent or correspondent in certain vessels, and the quantity is named with the qualification of 'about' or 'more or less,' or words of like import, the contract applies to the specific lot; and the naming of the quantity is not regarded as in the nature of a warranty, but only as an estimate of the probable amount, in reference to which good faith is all that is required of the party making it. In such cases, the governing rule is somewhat analogous to that which is applied in the description of lands, where natural boundaries and monuments control courses and distances and estimates of quantity. But when no such independent circumstances are referred to, and the engagement is to furnish goods of a certain quality or character to a certain amount, the quantity specified is material, and governs the contract. The addition of the qualifying words, 'about,' 'more or less,' and the like, in such cases, is only for the purpose of providing against accidental variations arising from slight and unimportant excesses or deficiences in number, measure, or weight."

Likewise, in *Kellogg* v. *Norman,* 74 N. Y. 596, the property to be supplied was described as 352 tons of oil cake per month, "being all the oil cake made by said parties at their mill." It was there held that the defendant was bound to take and pay for all the oil cake made by the plaintiffs during the time agreed upon, and that specifications of quantity were merely expressive of expectation, and not controlling. Again, in *Herrer* v. *Gaines,* 63 N. C. 72, the producers contracted to deliver "all the ginseng we have on hand and shall collect this season or fall amounting to five to eight thousand pounds, as near as we can estimate, including all we shall get." This language was construed to mean no definite quantity but only what was on hand and gathered. In *Morrell* v. *San Tomas Drying etc. Co.,* 13 Cal. App. 306 (109 Pac. 632), the language used was "entire crop of dried French prunes, season 1907, estimated at 100 tons." It was there held that the contract was binding on both parties as to the whole crop, although it amounted to much less than 100 tons, and that a delivery of the less amount would satisfy the contract, if it comprised the whole crop. See, also, *Crosby* v. *De Bord* (Tex. Civ. App.), 155 S. W. 647; *Keenan* v. *Fertilizer Co.,* 202 Ala. 29 (79 South. 367); *Railway Co.* v. *Morris,* 203 Ill. App. 449.

2. We proceed now to examine the various assignments of error. At the trial the plaintiff offered testimony to the effect that the defendant had said to the plaintiff's agent that the lambs contracted for would be as good as they were the year before, the defendant having delivered lambs to the plaintiff under contract the previous year. The witness was then asked: "What sort of lambs as to breed had he delivered the year before?" The defendant ob-

jected to this as incompetent, irrelevant and immaterial, and that there is no guaranty on these lambs. The court sustained the objection. The plaintiff by his counsel offered to prove by the witness that the year before, Arnwine had delivered mixed fine and coarse wool lambs about October 1st, lambs that were dropped April 10th and May 15th to 18th, and that at the time of the delivery those lambs averaged sixty-three pounds in weight. The offer was objected to and the objection was sustained. One of the affirmative specifications about the lambs is, that "at the time of delivery the same shall be of good size and merchantable condition." We find the following language in Or. L.:

Section 717. "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

Section 718. "The terms of a writing are presumed to have been used in their primary and general acceptation, but evidence is nevertheless admissible that they have a technical, local or otherwise peculiar signification, and were so used and understood in the particular instance, in which case the agreement shall be construed accordingly."

In *Morrell* v. *San Tomas Drying etc. Co., supra,* it was held that parol testimony was admissible to explain what was meant in the contract by the term "Morrell Ranch," the result being that it was permissible to show that the term included not only the Morrell home place, but two others adjoining, which were leased and cultivated by Morrell. "Good size" is a relative term, and required explanation to ascertain the exact meaning attributed to it by the parties

to the contract. A lamb might be of good size at the moment of its birth, and it might be in merchantable condition at that time for anyone who desired to purchase such a lamb. It might continue to be of good size from then until its death, increasing in size in proportion to its natural growth. There might also be a time when from various causes the development of the lamb would be arrested and it would not attain the size that ordinarily results under normal conditions. Evidence was therefore admissible to explain this term as it was contemplated by the parties. If, as part of the transaction in explaining the term, one of the parties had made an admission as to the weight of a lamb of "good size," that would be admissible against him. If the defendant referred to other lambs previously handled by the parties in their transactions, as a standard or sample by which the lambs here involved were to be judged, that also would be admissible against him. It would be of no avail to the plaintiff to be allowed to show that the defendant said the lambs were to be like those delivered the previous year but to be refused the privilege of showing what those other lambs were like, either in condition or weight. The court was in error in restricting the plaintiff from going into that question as proposed.

3. Error is assigned also in allowing the defendant to show where the bands of sheep were during the season preceding the time for delivery, and who were in charge of them. The effort of the answer is to show that a particular band of sheep was meant by the contract, irrespective of their quantity or condition. This would be a contradiction of the contract and an importation into it of terms not mentioned there. The evidence offered, about what was meant

by the expressions "good size," "merchantable condition," and the like, was given in interpretation of the contract and not in contradiction thereof; but to show that a certain band of sheep was intended, without reference whether or not they complied with the specifications of the contract, would contradict the agreement. It matters not where the sheep had been kept or who had them in charge. It was incumbent upon the defendant to tender for delivery the kind specified in the contract, whether they had been stall fed or range fed.

4. It was likewise erroneous to allow the defendant to testify about his understanding of the contract as to the weight of the lambs. The contract is to be interpreted by the court. The interpretation thereof may be aided by evidence under the sections of the statute above quoted. These may involve questions of fact, and in such cases it is the duty of the court to instruct the jury as upon a question of mixed law and fact.

5, 6. The defendant and several of his witnesses were allowed to testify that they had never heard that "good size and merchantable condition" meant that lambs should weigh any certain number of pounds. The mistake of counsel for defendant on that subject seems to lie in construing the testimony as an attempt to prove a custom. This is an erroneous conception. As to the number of pounds, the witnesses for the plaintiff in effect gave their opinion as experts about what the weight of such a lamb should be. The defendant was entitled to call other experts to give their opinion about what the weight should be. But it is not by the mark to say that they had never had heard of the same. Hundreds of witnesses might be called who had never heard

of such a rule, but their lack of knowledge would not be material to the decision of the issue. Sundry witnesses of the defendant were allowed to give evidence that they had never heard of anyone's rejecting an entire band of sheep on account of their weight. This comes within the same category with the objection just previously discussed, and ought not to have been allowed. The reputation of the defendant and his witness Tipton as to being good sheep men was not involved in the controversy, and hence should not have been admitted in testimony.

7, 8. The plaintiff complains that the defendant had no right to offer in evidence the state of the market for lambs at the time and place of delivery, or to give the market price of such lambs at that time and place. We must remember, however, that the defendant is here alleging a counterclaim growing out of the same transaction and in effect has brought an action against the plaintiff, seeking to recover damages from the latter for his breach of the contract to buy the lambs at a certain price. If the sheep tendered by the defendant were at the time and place of delivery of the kind and quality specified in the contract and the plaintiff wrongly refused to receive them and pay for them, according to the contract, the measure of the defendant's general damages would be the difference between the contract price of $9 per head and the lesser market price at the time and place of delivery. The defendant was within his rights in offering evidence of the market price in support of his counterclaim.

9, 10. On cross-examination of the defendant, the plaintiff essayed to have him testify about how much advance he would have received, if he had offered 2,800 instead of 3,800 head of lambs. In the view we

have taken of the stipulation about the number, this would become immaterial, and besides it amounted to an effort on the part of the plaintiff to make the defendant advance an argument to the jury in favor of the plaintiff. There was no error in excluding that kind of testimony. In argument, the plaintiff contends in effect that although his agent did not at the time and place of delivery ground his objection on the deficiency in number of lambs, yet he has a right to urge that fact in this action as a breach of the agreement by the defendant admissible as a defense against the latter's counterclaim. The plaintiff, however, does not plead that the defendant withheld any of his 1918 crop of lambs. The tender of 2,800, provided they were all of his crop of that year, was no breach of the stipulation as to number, as we have already shown. Hence the argument is not apropos.

11. The plaintiff also complains of the refusal of the court to allow his agent Hunter to relate what telephonic instructions the plaintiff had given him in reference to buying all the lambs he could get. This would have been a self-serving declaration and clearly inadmissible as such. After the defendant had put in his evidence in support of his case and had given testimony about the condition of the lambs which he offered, the plaintiff offered the testimony of William Allen to the effect that he inspected the defendant's lambs about December 1st and found them stunted, undersized and of inferior growth. The court sustained the defendant's objection to this testimony, on the ground that it was part of the plaintiff's case in chief. This was not merely cumulative evidence, but rather corroborative. It would have been cumulative, if other witnesses for the plaintiff had

testified that they had examined the lambs in December and found them in the condition mentioned: *State v. Evans,* 98 Or. 214 (192 Pac. 1062, 193 Pac. 927). The testimony would of course have been proper as part of the plaintiff's case in chief in support of his averment that the lambs offered did not comply with the terms of the contract in certain respects. If, however, we consider the case as one between the plaintiff as a defendant and the defendant here acting as a plaintiff in the prosecution of his action for damages for the plaintiff's breach of the agreement, it may well be said that Stanfield as a defendant could offer that testimony in opposition to the defendant's contention that the sheep were of good size and merchantable condition. As the judgment must be reversed, however, on other grounds, it is believed that this assigned error will not again arise.

12, 13. The principal objections to the instructions of the court to the jury are that they include the matter of abandonment of the contract. This is a second appeal in this case, the opinion in the first having been rendered by the late Mr. Justice BENSON in *Stanfield v. Arnwine,* 94 Or. 381 (185 Pac. 759). There, the judgment was in favor of the plaintiff. The court had instructed the jury on the question of abandonment of the contract. The judgment was reversed on the ground that the instructions were not pertinent to the issue. As to the alleged breach by the plaintiff, the allegation of the answer here is substantially like that of the answer at the former trial. Speaking about the question, Mr. Justice BENSON used this language:

"In an action like the one before us, the questions presented are: Has there been a breach of the contract? If so, by whom? And which party is entitled to recover? In such an action, the plaintiff is liable

upon defendant's counterclaim, if, in truth, defendant has complied with the terms of the agreement, even though plaintiff honestly rejected the lambs as falling below its demands. The instructions were therefore not pertinent to the issues. For this there must be a reversal."

Moreover, the evidence in the present record does not justify such an instruction. Each party was claiming the benefit of the contract. Each was claiming that he was complying with its terms, and accusing the other of a breach thereof.

Claiming that the defendant violated the contract, the plaintiff is in court urging that whereas he paid the defendant $5,000 as earnest-money, he has received nothing, besides incurring expenses in the matter. He demands that he be made whole by the assessment of damages against the defendant as for a breach of contract. Abandonment, as distinguished from a mere breach, is as foreign to the issues on this appeal as it was on the former. Its injection into the case was error. At least, the decision rendered in the former appeal is the law of the case, and the parties are required to conform their proceedings to that decision.

14. In brief, if the plaintiff was without fault in the performance of the contract on his part, and was ready, able and willing to receive and pay for lambs that answered the description prescribed by the contract, and the defendant was at fault as alleged in the complaint, the plaintiff is entitled to recover the earnest-money paid, and such reasonable expenditures as he necessarily made in his effort to carry out the contract. On the other hand, if the defendant at the time and place of delivery tendered to the plaintiff his entire crop of lambs for the year 1918, the same being of good size and merchantable condition

and otherwise complying with the contract, and the plaintiff refused to receive and. pay for them, the defendant would be entitled to recover as damages the difference between the contract price and the lesser reasonable market value of the lambs at the time and place of delivery, together with such expenses as he reasonably incurred in carrying out the contract, that he would not have incurred but for that.

The judgment is reversed and the cause remanded for further proceedings. REVERSED AND REMANDED.