Argued and submitted February 9, reversed and remanded April 26, 2006

Jeremy NIXON,
*Appellant,*

*v.*

CASCADE HEALTH SERVICES, INC.,
dba St. Charles Medical Center,
an Oregon corporation,
*Respondent.*

04CV0149MA; A126853

134 P3d 1027

Timothy J. Vanagas argued the cause for appellant. With him on the brief was Samuel T. Stanke.

Cecil Reniche-Smith argued the cause for respondent. With her on the brief were Janet M. Schroer and Hoffman, Hart & Wagner, LLP.

Before Haselton, Presiding Judge, and Wollheim and Rosenblum,* Judges.

HASELTON, P. J.

---

* Rosenblum, J., *vice* Richardson, S. J.

## HASELTON, P. J.

Plaintiff appeals in this declaratory judgment action, ORS 28.020, assigning error to the allowance of summary judgment for defendant. The substantive dispute concerns the proper interpretation of a "Release and Hold Harmless Agreement" (release agreement) that the parties executed in settling a medical malpractice action by plaintiff against defendant. In particular, does that agreement preclude plaintiff from asserting a defense, based on defendant's alleged negligence, to defendant's efforts to collect payment from plaintiff for unpaid medical services? We conclude that the trial court erred in determining, on this record, that defendant was entitled to judgment as a matter of law. ORCP 47 C. Accordingly, we reverse and remand.[1]

■■      Summary judgment is proper if the "pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ORCP 47 C. "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.* In reviewing the allowance of summary judgment, we draw all reasonable inferences in favor of plaintiff, who was the nonmoving party. *West v. Allied Signal, Inc.*, 200 Or App 182, 187, 113 P3d 983 (2005).

Viewed in accordance with the foregoing standard, the record discloses the following material facts: In 2002, plaintiff underwent surgery at St. Charles Medical Center, a hospital in Bend that defendant operates. Plaintiff allegedly suffered serious injuries while in defendant's care, including deep vein thrombosis and a pulmonary embolism. Thereafter, plaintiff filed an action in Deschutes County Circuit

---

[1] As explained more fully below, *see* 205 Or App at 237 n 4, plaintiff unsuccessfully cross-moved for summary judgment but has not assigned error to the denial of that cross-motion. Accordingly, the correctness of that ruling is not presented for our review.

Court, alleging that he had been injured as a result of defendant's negligence. In his complaint, plaintiff sought $1,100,000 in noneconomic damages and $400,000 in economic damages. The claimed economic damages included $175,000 for medical expenses, including future expenses, resulting from plaintiff's injuries.

In 2003, the parties entered into a settlement whereby defendant, through its insurer, agreed to pay plaintiff $277,000. As part of that settlement, the parties executed the release agreement, which reads, in pertinent part, as follows:

"FOR THE SOLE CONSIDERATION of the sum of TWO HUNDRED SEVENTY SEVEN THOUSAND DOLLARS ($277,000.00) * * * [plaintiff] does hereby * * * fully and forever release and discharge [defendant and its insurer] * * * and all others directly or indirectly liable *for any and all claims and demands, actions, and causes of actions, damages, claims for injuries, both known and unknown*, including future developments thereof on account of, or in any way growing out of, any and all known and unknown personal injuries resulting therefrom or to result from that certain incident that occurred on or about February 25, 2002, while plaintiff was a patient at St. Charles Medical Center.

"[Plaintiff] agree[s] that this settlement is in full compromise of a doubtful and disputed claim both as to the question of liability and as to the nature, extent and permanency of such injuries and damages and that the payment is not to be construed as an admission of liability.

"[Plaintiff] further agree[s] that the nature, extent and results of [plaintiff's] injuries or damages * * * are not now all known or anticipated, but [plaintiff] nevertheless desire[s] to settle and compromise said claim in full. [Plaintiff] further agree[s] to indemnify and hold harmless [defendant and its insurer] from any and all claims, liens, actions or lawsuits for medical expenses, or any other expenses incurred as a result of or related to the above-referenced incident * * *.

"[Plaintiff] further agree[s] to execute a stipulation requesting a Judgment of Dismissal from the Circuit Court

of Deschutes County dismissing [plaintiff's negligence complaint] with prejudice and without costs[.]"

(Emphasis added.)

At the time that the parties were negotiating the settlement, plaintiff had an outstanding hospital bill from defendant in the amount of $24,018.39 for medical and surgical services, including services that had been the subject of his malpractice claim. The parties discussed that bill during negotiations. Defendant told plaintiff that "the bill was still owed," but the parties never reached any agreement regarding payment of the hospital bill.

Sometime after the parties executed the release agreement, defendant made a demand on plaintiff for payment of the disputed bill. Plaintiff refused to pay, informing defendant that, if defendant sued to collect the bill, he would raise defendant's negligence (*i.e.*, the alleged malpractice) as a defense to payment. Defendant responded that the release agreement—and particularly the language emphasized above—precluded plaintiff from raising such a defense to a collection action.

Plaintiff then brought this action, seeking a declaration regarding the proper construction and application of the release agreement. ORS 28.020. Defendant answered and counterclaimed for payment of the outstanding hospital bill.

The parties subsequently filed cross-motions for summary judgment. Plaintiff contended that the release agreement did not preclude him from raising a defense, based on defendant's alleged malpractice, to a collection action because the critical language of the release does not refer to "defenses." Rather, that language refers to "claims and demands, actions, and causes of actions, damages, [and] claims for injury"—all of which, plaintiff contended, are procedurally and substantively distinct from *defenses*. *See, e.g.*, ORCP 13 A; ORCP 16 B, C; ORCP 18; ORCP 19 A; ORCP 21 A.

Conversely, in its cross-motion,[2] defendant argued that, notwithstanding that the release agreement did not explicitly refer to "defenses,"

> "the plain meaning of the agreement is that plaintiff released any right to receive *any economic benefit* from the incidents underlying his original complaint. In exchange, he was compensated for all economic and non-economic damages sought in his lawsuit, including *all* medical expenses related to his hospitalization. To now allow plaintiff to assert that he does not have to pay his hospital bills because of the hospital's alleged negligence defeats the purpose of the settlement in two ways: first, it allows plaintiff a double recovery—to, in essence, recover an additional $24,018.39 that should have been paid to the hospital—and second, it allows plaintiff to benefit economically from the assertion of a 'negligence' claim against the hospital in the guise of an affirmative defense."[3]

(Emphasis in original.) The trial court denied plaintiff's motion but granted defendant's cross-motion, ultimately entering a judgment in favor of defendant on its collection counterclaim.

Plaintiff appeals, assigning error to the trial court's allowance of defendant's cross-motion for summary judgment. Plaintiff does not, however, assign error to the denial of his own motion for summary judgment.[4]

---

[2] In cross-moving for summary judgment, defendant contended that, if the court agreed with its construction of the release agreement, defendant was entitled to judgment on its counterclaim for collection of the hospital bill.

[3] In making that argument to the trial court, defendant relied, in part, on the release agreement's "indemnify and hold harmless" language. On appeal, defendant did not reiterate that reliance. Because "indemnify and hold harmless" clauses generally refer to protection against third-party actions, that language does not assist defendant's position here. *See generally U.S. Fire Ins. Co. v. Chrysler Motors,* 264 Or 362, 505 P2d 1137 (1973) (explaining the proper application of "indemnify and hold harmless" clauses).

[4] Given that procedural posture, and the requisites and constraints of ORAP 5.45, we do not address the correctness of the trial court's denial of plaintiff's motion for summary judgment. *See Eden Gate, Inc. v. D&L Excavating & Trucking, Inc.,* 178 Or App 610, 622, 37 P3d 233 (2002) ("In an appeal from a judgment that results from cross-motions for summary judgment, if *both* the granting of one motion *and* the denial of the other are assigned as error, then both are subject to review." (Emphasis added.)).

"A release agreement is a contract subject to the rules of contract construction and interpretation." *Ristau v. Wescold, Inc.*, 318 Or 383, 387, 868 P2d 1331 (1994). Very recently, in *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 129 P3d 773 (2006), we summarized the proper application of the three-step methodology for contract interpretation prescribed in *Yogman v. Parrott*, 325 Or 358, 937 P2d 1019 (1997).[5] First, the court is to determine whether the contractual provision is ambiguous. *Batzer Construction, Inc.*, 204 Or App at 315. A contractual provision is ambiguous if it is susceptible to more than one reasonable interpretation. *Porter v. Oba, Inc.*, 180 Or App 207, 211, 42 P3d 931, *rev den*, 334 Or 693 (2002). In making that determination, the court is to consider the text and context of the provision. *Batzer Construction, Inc.*, 204 Or App at 315 (citing *Yogman*, 325 Or at 361). In addition, and consistently with the parol evidence rule, ORS 41.740,[6] and *Abercrombie v. Hayden Corp.*, 320 Or 279, 883 P2d 845 (1994), the court, in making that determination, is also to consider extrinsic evidence of "the circumstances underlying the formation of the contract." *Batzer Construction, Inc.*, 204 Or App at 317.[7]

Second, if the text, context, and circumstances of the contract's formation show that the provision is ambiguous,

---

[5] *Batzer Construction, Inc.*, presented a different procedural posture than does this case. There, we reviewed the trial court's allowance of a directed verdict; here, we are reviewing a summary judgment. As noted, under ORCP 47 C, summary judgment is appropriate only if "there is no genuine issue as to any material fact." Thus, the trial court in allowing summary judgment cannot do so based on its determination of factual disputes or its choice between or among competing inferences that can reasonably be drawn from the facts. *See, e.g., Alpine Mountain Homes v. Bear Creek Homes*, 202 Or App 390, 400, 122 P3d 111 (2005).

[6] ORS 41.740 provides, in part, as follows:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be * * * no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud."

[7] In *Batzer Construction, Inc.*, 204 Or App at 315-17, we rejected the view, expressed in *Webb v. National Union Fire Ins. Co. of Pittsburgh*, 207 F3d 579, 581-82 (9th Cir 2000), that *Yogman* had implicitly partially overruled *Abercrombie*.

the court, in attempting to resolve that ambiguity, is to consider "extrinsic evidence of the contracting parties' intent." *Yogman*, 325 Or at 363; *see also Batzer Construction, Inc.*, 204 Or App at 316-17 (noting that, at *Yogman*'s second level, courts can consider extrinsic evidence "to explain an ambiguity, intrinsic or extrinsic. ORS 41.740."). Third, and finally, if the "provision remains ambiguous after the first two steps have been followed, the court relies on appropriate maxims of construction" to determine the provision's meaning. *Yogman*, 325 Or at 364.

We begin, then, with the text of the release agreement, viewed in context and with reference to evidence of the circumstances under which that agreement was made. Because the matter is before us on the allowance of defendant's cross-motion for summary judgment, we view the extrinsic evidence of the circumstances underlying the contract's formation, and reasonable attendant inferences, in the light most favorable to plaintiff. *See, e.g.*, *West*, 200 Or App at 187. Again, the operative language provides that plaintiff fully

"release[d] and discharge[d] [defendant and its insurer] * * * and all others directly or indirectly liable for any and all claims and demands, actions, and causes of actions, damages, claims for injuries, both known and unknown, including future developments thereof, on account of, or in any way growing out of, any and all known and unknown personal injuries resulting therefrom or to result from that certain incident that occurred on or about February 25, 2002, while plaintiff was a patient at St. Charles Medical Center."

Plaintiff emphasizes, and defendant acknowledges, that the release agreement does not use the term "defense." Rather, it refers to "claims," "demands," "actions," "causes of actions," and the like. Each of those terms describes either a procedure by which a party raises an affirmative demand for relief or a form of the resultant relief. For example, ORCP 18 states that a "claim" shall contain a "statement of the ultimate facts constituting a claim for relief" and a "demand of the relief which the party claims[.]" Conversely, a "defense" refers to a responsive pleading. *See, e.g.*, ORCP 21 A (a defense "to a claim * * * shall be asserted in the responsive

pleading thereto"). Further, the Oregon Rules of Civil Procedure consistently differentiate, even within the same provisions, between "claims" and "defenses" both procedurally and substantively. They are not fungible concepts. *See, e.g.,* ORCP 13 A ("The pleadings are the written statements by the parties of the facts constituting their respective claims and defenses."); ORCP 16 B ("Each separate claim or defense shall be separately stated."); ORCP 19 A ("A party shall state in short and plain terms the party's defenses to each claim * * *.").[8]

Thus, as a matter of plain meaning, defendant's position that the release agreement *unambiguously precludes* plaintiff from raising a negligence defense is unfounded. "Claim" does not mean "defense"—and, if defendant had wanted to explicitly preclude the assertion of "defenses," it presumably could have done so.[9] If anything, the text unambiguously does *not* preclude plaintiff from asserting a negligence *defense*.

The broader context—of the release agreement read as a whole—corroborates that view. The agreement states that plaintiff's release relates to claims for his "injuries" arising from defendant's alleged negligence. It states that the agreement is "in full compromise of a doubtful and disputed claim" regarding "liability," and goes on to require plaintiff to dismiss his malpractice action as a condition of the settlement. Thus, in context, "claim" and "demand" refer to plaintiff's malpractice action and to any future effort by plaintiff to obtain damages for his injuries arising from the same operative transaction.

As explained above, however, our first-level *Yogman* inquiry also requires us, in determining whether the release agreement is ambiguous, to consider extrinsic evidence of the circumstances underlying the formation of that agreement. *See Batzer Construction, Inc.*, 204 Or App at 317. The parties

---

[8] The generally accepted legal definitions of the terms are consistent with that conclusion. "Claim" is defined as "[t]he assertion of an existing right[.]" *Black's Law Dictionary* 264 (8th ed 1999). Likewise, "demand" is defined as "[t]he assertion of a legal or procedural right." *Id.* at 462. In contrast, a defense is "[a] defendant's stated reason why the plaintiff or prosecutor has no valid case[.]" *Id.* at 451.

[9] The record does not disclose whether the release agreement was drafted by plaintiff, by defendant, or by both.

identify two arguably pertinent circumstances: the existence and nature of the underlying malpractice action, and the statements made during the settlement negotiations.[10] Viewing the evidence pertaining to those circumstances in the light most favorable to plaintiff, nothing in those circumstances alters the conclusion that the release agreement unambiguously does *not* preclude plaintiff from asserting a negligence-based defense to a collection action for payment of the medical services that allegedly resulted in his injuries.

As noted above, *see* 205 Or App at 237, defendant contends that, if plaintiff were allowed to raise a negligence defense to a collection action, that could result in plaintiff reaping a "double recovery"—that is, recovering damages for medical expenses but then not paying those expenses.[11] Defendant contends that the parties could never have intended that result and, thus, the preclusion of "claims," etc., necessarily encompasses "defenses."

Defendant's "double recovery" contention depends on the assumption that the amounts paid in settlement did, in fact, include payment for the medical services that defendant provided. As corroboration of that assumption, defendant points to two undisputed facts: (1) plaintiff's malpractice complaint sought $175,000 in special damages for past and future "medical expenses"; and (2) some part of the $277,000 settlement was payment for medical expenses.

Defendant's "double recovery" proposition is severely flawed, both as a matter of logic and of proof. Again,

---

[10] The distinction between the extrinsic evidence that can properly be considered at the first, as opposed to the second, *Yogman* level is, as a practical matter, less than clear. Although ORS 42.220 limits consideration at the first level to evidence of the "circumstances under which the agreement was made," the case law offers little guidance as to what evidence so qualifies. Nevertheless, it would seem that the nature of the underlying litigation that was the object of the parties' settlement would constitute such a "circumstance." In addition, the content of discussions during contract negotiations appear to qualify as well. *See, e.g., Batzer Construction, Inc.*, 204 Or App at 321 (party's statement regarding the meaning of a certain term in the proposed contract was considered an "underlying circumstance") (citing *Stanfield v. Arnwine*, 102 Or 289, 299, 202 P 559 (1921)).

[11] As a literal matter, defendant's argument would be more properly termed a "windfall" argument than a "double recovery" argument because plaintiff did not receive multiple payments for the same element of damage. Still, the argument is defendant's, and, because defendant employs the "double recovery" shorthand, we shall do the same.

the essential factual premise of the "double recovery" argument is that the $277,000 settlement must have included some payment for some part of defendant's outstanding bill ($24,018.39). Conversely, if the $277,000 was paid for items of damages that did not include defendant's outstanding bill (or any part of that bill), there could be no "double recovery." Here, the record does not show that any part of the $277,000 was paid to cover any portion of defendant's outstanding bill. Although some part of the settlement represented payment for "medical expenses," the record does not disclose what that portion was—it could have been $5.00, $24,018.39, or $175,000—much less what services it covered. As noted, plaintiff's claimed "medical expenses" of $175,000 included expenses for services other than those that defendant rendered, including services for future care. In fact, defendant's outstanding bill constituted only one-seventh of plaintiff's total alleged medical expenses.

Thus, there is no necessary logical or factual correspondence between any amount paid in settlement for "medical expenses" and any payment of defendant's outstanding bill. On this record, any implication to the contrary would be entirely speculative.

Indeed, and to the contrary, the record, viewed most favorably to plaintiff, reasonably supports the opposite inference. To accept defendant's "double recovery" notion, a finder of fact would be required to accept that the parties structured a settlement agreement whereby defendant paid money to plaintiff but only on the mutual understanding that defendant would then sue plaintiff to obtain disgorgement of the same money—and that plaintiff would be precluded from defending such a subsequent action. Such convolution balks common sense.

Defendant also points to evidence of a discussion between the parties' attorneys during negotiations. That evidence consists of defendant's response to a request for admission pursuant to ORCP 45. Plaintiff requested an admission by defendant that,

> "in the settlement negotiations preceding the settlement in the underlying matter, [attorneys for plaintiff and defendant] discussed whether the settlement agreement would

require [plaintiff] to pay the outstanding bill * * * from the settlement funds."

Defendant's admission was as follows:

"[A]dmit that [attorneys for plaintiff and defendant] had a short discussion regarding [plaintiff's] requirement to pay the outstanding bill * * *. [*Defendant's attorney*] *advised* [*plaintiff's attorney*] *that the bill was still owed.*"

(Emphasis added.) The emphasized material is uncontroverted—and defendant suggests that it substantiates its position that some portion of the settlement proceeds corresponded to amounts owed on defendant's outstanding bill. Defendant further suggests that that, in turn, corroborates its position that the release agreement was intended, and designed, to preclude an improper "double recovery."

We do not agree. Even assuming that the content of the parties' antecedent discussions is cognizable at *Yogman*'s first level as evidence of the circumstances underlying the formation of the contract, *see* 205 Or App at 241 n 10, the mere fact that the parties were aware of the outstanding bill says nothing about how, if at all, the release agreement addressed that matter. If anything—and, again, viewing reasonable inferences in the light most favorable to plaintiff—the fact that the parties were aware of the outstanding bill but made no reference to that bill, or to an action to collect on that bill, in the release agreement suggests that the release agreement did not resolve that matter. That is, under the applicable standard of review, a factfinder could reasonably determine that the parties "agreed to disagree" and deferred that matter.

In sum, nothing in the extrinsic evidence that defendant invokes, when viewed most favorably to plaintiff, interjects a plausible ambiguity compelling resort to *Yogman*'s second level. Rather, under the applicable standard of review, the record establishes that the release agreement unambiguously does *not* preclude plaintiff from raising a negligence defense to defendant's collection action. The trial court, in granting summary judgment for defendant, erred in concluding otherwise.

Reversed and remanded.