Argued and submitted December 6, 2005, reversed and remanded on appeal;
affirmed on cross-appeal December 13, 2006

## Robert W. BARNETT,
*Appellant - Cross-Respondent,*

*v.*

## REDMOND SCHOOL DISTRICT 2J,
*Respondent - Cross-Appellant.*

## 03CV0415MA; A126875

149 P3d 250

Brian Gingerich argued the cause for appellant - cross-respondent. On the briefs were Brian MacRitchie, Merrill O'Sullivan, LLP, Matthew S. Barnett, and Holme Roberts & Owen LLP.

Gregory P. Lynch argued the cause for respondent - cross-appellant. With him on the brief were Stan Austin and Hurley, Lynch & Re, P.C.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Richardson, Senior Judge.*

RICHARDSON, S. J.

---

* Richardson, S. J., *vice* Ceniceros, S. J.

## RICHARDSON, S. J.

Plaintiff provided personal services to defendant Redmond School District (the district) for many years until the district terminated his services in June 2002. Plaintiff filed this action for breach of contract, asserting that the district's unilateral termination of his contract violated its provision that it could be terminated only with the parties' mutual consent. The trial court granted the district's motion for summary judgment, agreeing with the district that the contract was not valid and enforceable because the district had not approved it and, additionally, because the district had not complied with procedures that it had adopted governing personal services contracts. Plaintiff appeals, contending, among other things, that summary judgment was improper because there were disputes as to material facts concerning whether the district had approved or ratified the contract and whether the district had, in fact, adopted the procedures governing personal services contracts. The district cross-appeals from the trial court's order vacating a prior judgment and entering the judgment from which plaintiff now appeals.

We first address the cross-appeal because, if the district is correct, we must vacate the judgment and dismiss the appeal. The procedural facts are not in dispute. Plaintiff filed his first notice of appeal on April 8, 2004, from a judgment purportedly entered on March 10, 2004. The judgment, however, was not actually entered until April 22, 2004. At that time, the trial court lacked jurisdiction to enter the judgment because, under ORS 19.270(1), the filing of the notice of appeal terminated the trial court's jurisdiction to enter a judgment. Accordingly, on May 6, 2004, pursuant to ORS 19.270(4), we entered an order granting the trial court leave, "on the motion of any party, to enter or reenter the judgment." The order further stated:

> "Once the trial court vacates the judgment of April 22, 2004, and reenters the judgment, appellant must file an amended notice of appeal in order for the appeal to proceed. The appeal will be held in abeyance pending the filing of the amended notice of appeal. However, the court will dismiss this appeal without further notice to the parties, for lack of

prosecution, if the amended notice of appeal is not filed within the 30 days from entry of the supplemental judgment allowed under ORS 19.255."

Three months passed, however, and neither party moved for the trial court to vacate or reenter the judgment. Accordingly, on August 11, 2004, we dismissed the appeal for lack of prosecution. After the order of dismissal, plaintiff filed a motion with the trial court to vacate and reenter the judgment of April 22, 2004. The trial court granted the motion and reentered the judgment on November 15, 2004. Plaintiff filed a timely notice of appeal from that judgment.

The district contends that the trial court erred in granting plaintiff's motion to vacate and reenter the judgment because plaintiff did not file his motion within the time allowed by this court for doing so. It argues that, once this court dismissed plaintiff's appeal, the window of opportunity for plaintiff to seek to have the trial court vacate and reenter its judgment had closed.

The district misreads our order giving leave to the trial court to enter a proper judgment. We did not place a time limit on the parties' action or on the trial court's authority to enter an appealable judgment. When no action was taken to provide an appealable judgment, we concluded that a reasonable time had elapsed and dismissed the appeal.

■ Our order of dismissal terminated the appeal but did not affect the action in the trial court. The dismissal of the appeal because of a nonappealable judgment returned the case to the trial court with plenary jurisdiction to resolve the action. The trial court could issue an appealable judgment and a party could appeal it by filing a new and timely notice of appeal. *See AK Media Group, Inc. v. City of Portland*, 192 Or App 204, 211-12, 84 P3d 1088 (2004); *Maduff Mortgage Corp. v. Deloitte Haskins & Sells*, 83 Or App 15, 22, 730 P2d 558 (1986), *rev den*, 303 Or 74 (1987). The trial court properly entered the judgment and plaintiff filed a timely notice of appeal. We affirm on the cross-appeal.

■ We turn to the merits of plaintiff's appeal. The dispositive question is whether there were disputes as to material facts, thereby precluding the grant of summary judgment

for the district on its two affirmative defenses. The question, then, is not so much what the facts *are* concerning those defenses, but whether the evidence in the summary judgment record concerning one or more material facts could reasonably form the basis for more than one factual finding. That is so because summary judgment is proper only if the evidence submitted shows

> " 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' ORCP 47 C. 'No genuine issue as to a material fact exists if, based upon the record before the court * * * no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment.' *Id.*"

*Nixon v. Cascade Health Services, Inc.*, 205 Or App 232, 234, 134 P3d 1027 (2006).

In determining whether the evidence is susceptible to more than one factual finding, ORCP 47 C requires that "the record before the court [be] viewed in a manner most favorable to the adverse [nonmoving] party[.]" When this court reviews an allowance of summary judgment, "we draw all reasonable inferences in favor of * * * the nonmoving party." *West v. Allied Signal, Inc.*, 200 Or App 182, 187, 113 P3d 983 (2005). *See also Bachmeier v. Tuttle*, 195 Or App 83, 85, 96 P3d 871 (2004).

The procedural history of this dispute is largely undisputed. In 1989, plaintiff entered into a written contract with the district for a term of six months to provide certain insurance consulting services to the district and its employees (1989 contract). The 1989 contract specified that plaintiff would be paid 2.5 percent of the total monthly premiums as billed by the district's medical provider, with no cap on the total amount of compensation to be paid. The 1989 contract stated that it was entered into "by and between Redmond School District 2J * * * and [plaintiff]." It was signed by Pat Young, the district's business manager, on behalf of the district, and by plaintiff. The 1989 contract contained no provision addressing how or whether it could be terminated prior to its expiration date.

Plaintiff provided the services as set out in the 1989 contract and continued for several years after that contract had expired to provide the same services under the same payment arrangement, but without a written contract in force. In 1998, plaintiff and Young discussed revising the existing "arrangement" with the district by entering into a written contract. A new contract was drawn up, with plaintiff drafting the description of duties and Young drafting the remainder of the contract. At no time did Young inform plaintiff that Young did not have authority to enter into the contract on behalf of the district.

The written contract was dated October 1, 1998, and was signed by plaintiff and by Young on behalf of the district on October 29, 1998 (1998 contract). As did the 1989 agreement, the contract stated that it was "by and between the Redmond School District 2J * * * and [plaintiff]." It specified that payment was to be 2.25 percent of the monthly benefit billings, *not to exceed $2,000 per month*. It also provided that it could be amended or terminated "upon mutual agreement between the District and [plaintiff]." This payment arrangement, due primarily to the cap, represented a significant savings to the district as compared to the prior arrangement. The 1998 contract is the only one involved in this litigation.

Plaintiff performed services for the district after October 1998, until the district terminated his services in June 2003. He received 55 monthly checks from the district for $2,000 each, beginning in December 1998 and continuing until June 2003. The district's payment procedures required that the district school board was to "receive monthly lists of bills for payment from district funds" and was to "certify the lists as correct and approved for payment." The district school board was further required to receive "special notice of all checks and pay/purchases over $1000," which were required to "go to the Board for approval." Because the monthly insurance premium billings exceeded $96,000 for each of the months that plaintiff performed services under the revised contract, plaintiff would have received more than $2,000 in compensation each month had he been paid under the terms of the prior arrangement.

In December 2002, plaintiff was informed that the district wanted to renegotiate the 1998 contract. After he indicated a willingness to renegotiate, plaintiff received a proposed agreement from the district that continued payment capped at $2,000, but gave the district the right to unilaterally terminate the contract. Plaintiff refused to accept the terms of the new agreement. On March 31, 2003, plaintiff received a termination letter from the district informing him that it "need[ed] to discontinue [its] business relationship" effective June 30, 2003, because it could no longer afford his services.

Plaintiff filed a complaint against the district stating three claims for relief: breach of contract, promissory estoppel, and unjust enrichment. Three months later, the district filed its answer, setting forth its affirmative defenses. One affirmative defense asserted that the district school board had not approved the 1998 contract as required by ORS 332.075(2)[1] and it was therefore not enforceable. Another affirmative defense asserted that that contract violated personal services contract adoption procedures set out in OAR 125-020-0320[2] and it was unenforceable.

Shortly after filing its answer to the complaint, the district moved for summary judgment. Attached to its motion were affidavits from its former business manager Young and board member Van Matre. Young essentially stated in his affidavit that he had neither sought nor obtained board approval prior to entering into the 1998 contract with plaintiff.[3] In his affidavit, Van Matre stated that he had not

---

[1] ORS 332.075(2) provides:

"All contracts of the school district must be approved by the district school board before an order can be drawn for payment. If a contract is made without the authority of the district school board, the individual making such contract shall be personally liable."

[2] OAR 125-020-0320 was repealed following amendments to ORS chapter 279 in 2003 by Oregon Laws 2003, chapter 794. All references to OAR chapter 125 are to the chapter prior to its repeal. Prior to repeal, OAR 125-020-0320 required that a formal selection process be followed for all personal services contracts in excess of $75,000.

[3] In a subsequent affidavit, Young said that it would have been "more accurate" if he had said in his earlier affidavit that he "[did] not recall one way or the other if [he] discussed the agreement with the school board or obtained their approval prior to signing it."

become aware of the agreement "until after it had been drawn up and signed by the parties," and that "neither [he] nor the Board collectively ever approved the agreement before it was signed nor did we authorize Mr. Young to draft or to sign this agreement on behalf of the School District." He further stated that

> "[t]he Board became aware of this agreement only after the decision had been made to terminate the relationship with [plaintiff] as a budgetary and cost saving matter. The Board did authorize the superintendent, Jerry Colonna, to renegotiate the agreement to bring it into compliance with the District's budgetary constraints * * *."

On the basis of those affidavits, the district argued that it was "undisputed" that the board had not approved the 1998 contract and that, accordingly, the 1998 contract violated ORS 332.075(2) and was invalid. The district also argued that it had not complied with procedures for personal services contracts required by OAR 125-020-0320, also causing the 1998 contract to be invalid.

In his initial response to the summary judgment motion, plaintiff argued that there was a question of material fact whether the board had approved the 1998 agreement and that summary judgment, therefore, was improper. Plaintiff also argued that the district was not bound by the procedures for personal services contracts set forth in OAR chapter 125, because those administrative rules governed state agency contracting, not contracts by school districts.

In its reply to plaintiff's response, the district asserted that it had adopted the Oregon Administrative Rules "relating to public contracting." It again attached affidavits from Young and Van Matre. Young stated in his affidavit that the board, prior to 1998, had "adopted and was bound by Chapter 125 of the Oregon Administrative Rules regarding public contracting." Van Matre reiterated that the board had adopted and was bound by the administrative rules set out in OAR chapter 125 "relating to public contracting." The district argued that summary judgment was appropriate on its defense that personal services contracting rules had not been followed because the evidence was conclusive

that it had adopted those rules and that the rules had not been followed.

In plaintiff's subsequent reply, he maintained that a question of fact remained as to whether the district had adopted the particular personal services contract procedures set out in OAR chapter 125 prior to entering into the 1998 contract. In support of that argument, he attached policies relating to personal services contracts that the board had adopted in 1999, 2000, and 2001. The policy adopted in 1999 was entitled "Purchasing Procedures and Bidding Requirements," and essentially required competitive bidding on all purchases, leases and agreements for services "other than agreements for personal service." The 2000 policy, entitled "Personal Service Contracts," set out requirements for the award of personal services contracts, and required board approval for "[c]ontracts for personal services in excess of $50,000." The policy did not indicate that it was amending any prior rules or policies relating to personal services contracts, nor did it refer to OAR chapter 125.

The 2001 policy also was entitled "Personal Services Contracts" but contained significantly more detail than the 2000 policy. In addition to defining "personal services contracts," the policy established procedural requirements for personal services contracts that varied depending on the dollar value of the contract, and specified that any contract in excess of $50,000 would be based on a request for proposals unless the district first obtained the board's approval that was to be based on specified criteria. This policy also did not mention that it was replacing prior policies governing personal services contracts and did not refer to OAR chapter 125 procedures governing personal services.

In a letter opinion granting the district's motion, the trial court merely stated its conclusion that plaintiff's affidavit and "accompanying documents" did not establish any genuine issue as to a material fact and that, as a result, the district was entitled to summary judgment.

Plaintiff argues, as he did below, that genuine issues of material fact exist as to the district's affirmative defenses of contract nonapproval and violation of personal services contracting procedures. And the district, as it did below,

maintains that the record establishes as a matter of law that the district school board never approved the 1998 agreement and that it had adopted OAR chapter 125 procedures governing "public contracting" that were in force when the 1998 contract was executed by plaintiff and Young, the district's business manager.

The district's arguments in support of the motion are, in essence, that the facts are undisputed because plaintiff presented no evidence that the 1998 contract was approved or that rules about personal services contracts had not, in fact, been adopted by the district. As indicated above, the only evidence presented by the district in support of the two affirmative defenses consisted of affidavits from Young and Van Matre. Plaintiff did not present direct evidence that the 1998 contract had been approved or that the regulations about personal services contracts had not been adopted by the district. He argues, however, that he presented evidence that raises an issue of fact whether the affidavits are credible.

Either of the two affirmative defenses, nonapproval of the contract or failure to abide by rules about personal services contracts, would defeat plaintiff's contract claim. We accordingly address each separately.

When a motion for summary judgment is supported by affidavits, it is not sufficient to defeat the motion with a generalized contention that cross-examination is necessary to test credibility. Neither is a speculative hope that trial will turn up something that would cause the factfinder to disbelieve the movant's evidence. In short, the motion cannot be defeated merely by reciting the incantation that credibility is for the jury to determine.

In *Doughty v. Birkholtz*, 156 Or App 89, 964 P2d 1108 (1998), we extracted with approval a principle from the Supreme Court's discussion in *To v. State Farm Mutual Ins.*, 319 Or 93, 104, 873 P2d 1072 (1994). We noted that the Supreme Court was

"suggesting possible inappropriateness of summary judgment where the moving party offers only witness affidavits in support of its motion and the credibility of the affiants is

brought into question by specific facts, particularly when 'the knowledge of events * * * on which the action lies are exclusively within the control of the party moving for summary judgment.' "

*Doughty,* 156 Or App at 99. *See also Downs v. Waremart, Inc.,* 137 Or App 119, 136-37, 903 P2d 888 (1995), *rev'd on other grounds,* 324 Or 307, 926 P2d 314 (1996). From those cases and the Supreme Court's *dicta,* we extrapolate the principle that, when the nonmovant can show some specific factor that directly places the affiant's credibility in jeopardy, that showing raises a fact issue sufficient to defeat summary judgment.

■    Turning first to the defense of nonapproval, we conclude that plaintiff has presented specific factors that put the affiant's credibility in jeopardy. After the 1998 contract was executed by plaintiff and Young in 1998, the district made 55 monthly payments of $2,000 each to plaintiff. Those payments were consistent with the terms of the 1998 contract.

ORS 332.075(2) provides that "[a]ll contracts of the school district must be approved by the district school board before an order can be drawn for payment." Additionally, the board's procedure required it to approve payments or purchases of over $1,000.

Payment history with the requirement that payment on the basis of an approved contract and monthly approval gives rise to a rebuttable presumption that the board approved the 1998 contract. ORS 40.135(1)(j) establishes a presumption that "Official duty has been regularly performed." Although the district presented evidence that, in its view, rebutted the presumption, that evidence only gives the trier of fact a basis to find contrary to the presumption. *See Wright v. SAIF,* 289 Or 323, 331 613 P2d 755 (1980). In other words, the payments made under the requirement of approval raises the presumption that the duty of approval was regularly performed. Although the presumption is rebuttable, it does not disappear simply because contrary evidence is presented. The trier of fact must give the presumption the value of evidence and weigh it with the contrary evidence to determine if the required duty was performed. Consequently, there is an issue of fact whether the district

approved the contract. The district has the burden of establishing its pleaded affirmative defense.

■    The second affirmative defense suffers from similar difficulties. The district ultimately presented affidavits of Young and Van Matre that the district had prior to 1998 "adopted and was bound by chapter 125 of the Oregon Administrative Rules regarding public contracting." It argued that, because those rules had not been followed in making the 1998 contract, the 1998 contract was invalid. The district presented no documentary evidence to support that statement. Plaintiff offered evidence, gleaned from the district's files, about the rules adopted by the district. We have detailed earlier in this opinion the materials that plaintiff submitted. It is not clear from the affidavits that the district submitted and the material offered by plaintiff what rules were adopted prior to 1998. There is also a question whether rules regarding "public contracting" that the district adopted applied to personal services contracts. We assume without deciding that failure to follow the rules, if adopted, would make the agreement invalid and unenforceable. There is, however, a question of fact whether the district has established the factual predicate to this affirmative defense—*i.e.*, whether the district had adopted rules before 1998 that would be applicable to this type of contract. Defendant was not entitled to summary judgment on the basis of its second affirmative defense.

In his response to the motion for summary judgment, plaintiff argued that if the district had not approved the 1998 contract prior to its execution, it ratified that contract by its subsequent conduct. The trial court did not separately address ratification. That issue is still viable on remand as an alternative response to the affirmative defenses.

Because there are issues of material fact relating to both of the district's affirmative defenses, the trial court erred in granting the motion for summary judgment.

Reversed and remanded on appeal; affirmed on cross-appeal.